(No. 107771.—■

NANCY KEAN, Appellant (Chip Russell, Intervenor-Appellant), v. WAL-MART STORES, INC., *et al.*, Appellees (Illinois Department of Revenue *et al.*, Intervenors-Appellees).

*Opinion filed November 19, 2009.*

Aron D. Robinson, Lance A. Raphael, Stacy M. Bardo and Allison A. Krumhorn, all of Chicago, for appellant.

Arthur M. Scheller III and John A. Simon, of Drinker Biddle & Reath LLP, of Chicago, for appellees.

Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro, Solicitor General, and Brett E. Legner, Assistant Attorney General, of Chicago, of counsel), for intervenors-appellees.

CHIEF JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Justices Thomas, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

Justice Freeman took no part in the decision.

## OPINION

At issue in this appeal is whether shipping charges for certain internet purchases of tangible personal property are subject to Illinois sales tax pursuant to the Retailers' Occupation Tax Act (ROTA) (35 ILCS 120/1 *et seq.* (West 2006)) and Use Tax Act (35 ILCS 105/1 *et seq.* (West 2006)). We hold that they are and therefore affirm the judgment of the appellate court affirming the dismissal of plaintiffs' complaints. 387 Ill. App. 3d 262.

### BACKGROUND

On October 12, 2006, plaintiff Nancy Kean filed a putative multistate class action lawsuit in the circuit court of Cook County against defendants Wal-Mart Stores, Inc., Wal-Mart.com, U.S.A., LLC, and Wal-Mart

Associates, Inc. (collectively, Wal-Mart). Kean alleged that on September 9, 2006, she purchased a trampoline through Wal-Mart's internet store at www.walmart.com. The price of the trampoline was $23.33, shipping charges were $7.97, and sales tax was $2.74, bringing Kean's order total to $34.04, which Kean paid online with a credit card. Kean alleged that rather than assessing sales tax on the cost of the trampoline alone, Wal-Mart also assessed sales tax on the shipping charges. Citing ROTA (35 ILCS 120/1 *et seq.* (West 2006)) and the Use Tax Act (35 ILCS 105/1 *et seq.* (West 2006)), Kean contended that Wal-Mart's imposition of sales tax on shipping charges was without statutory authority. According to documents attached to the complaint, after completing her internet purchase, Kean communicated with Wal-Mart by e-mail regarding the sales tax. Kean advised Wal-Mart that she "recently checked with the State of Illinois, and was told that it is not legal to charge tax on shipping." In its e-mail reply, Wal-Mart stated that it was required by law to charge and collect the tax.

Based on these allegations, Kean claimed, in count I, that Wal-Mart violated the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2006)). Kean sought, *inter alia*, actual damages on behalf of herself and a class consisting of all consumers who purchased an item from Wal-Mart and were charged sales tax on the shipping of that item "when such consumer resided in a state where the imposition of sales tax on shipping services is prohibited." In count II, Kean claimed that, to the extent Wal-Mart does not remit the improperly collected taxes to the taxing authority, Wal-Mart has been unjustly enriched. Kean sought a disgorgement order on behalf of herself and the class. In count III, Kean sought injunctive relief—the creation of a class protest fund into which Wal-Mart would deposit all sales tax on shipping charges it still held, as well as all sales

tax on shipping charges it would collect in the future, until a determination of the merits of the lawsuit was made. Kean also sought a permanent injunction enjoining Wal-Mart from collecting sales tax on shipping charges.

On November 3, 2006, Kean filed a motion for a temporary restraining order and preliminary injunctive relief, seeking the creation of the protest fund described in her complaint. Kean argued that injunctive relief was necessary because, under Illinois law, once Wal-Mart remits the collected taxes to the state, the class members will have no recourse; the disputed tax funds will be outside of their reach. In response to Kean's motion, Wal-Mart maintained that it had, in fact, already remitted to the State of Illinois any sales tax collected during September 2006, including any sales tax Kean paid on her trampoline purchase. Wal-Mart provided a supporting affidavit from its senior tax manager, explaining that taxes Wal-Mart collects are remitted to the State on the twentieth day of the month following the month the tax is charged. Thus, the taxes Kean was charged on her September 9 purchase were remitted by Wal-Mart on October 20. Wal-Mart also argued that injunctive relief was not warranted because Kean had not demonstrated a likelihood of success on the merits. Wal-Mart maintained that the delivery of the trampoline to Kean was an inseparable link in the chain of events leading to completion of the sale. As such, the shipping charges were part of the "selling price" of the trampoline and properly included in Wal-Mart's taxable "gross receipts" under ROTA (35 ILCS 120/2—10 (West 2006)). Finally, Wal-Mart argued that Kean had failed to follow the statutory guidelines for creation of a protest fund. See 30 ILCS 230/2a, 2a.1 (West 2006).

On November 14, 2006, the circuit court denied Kean's motion for a temporary restraining order "for the

reasons stated in open court." A transcript of the hearing on Kean's motion and the circuit court's oral ruling has not been made a part of the record on appeal.

Wal-Mart filed a combined motion to dismiss Kean's complaint pursuant to section 2—619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619.1 (West 2006)). Wal-Mart argued that count I should be dismissed with prejudice under section 2—615 of the Code (735 ILCS 5/2—615 (West 2006)) because Wal-Mart had a legal obligation to collect the sales tax and thus Kean cannot plead any set of facts entitling her to relief under the Consumer Fraud Act. As to count II, Wal-Mart argued for dismissal under section 2—619(a)(9) of the Code (735 ILCS 5/2—619(a)(9) (West 2006)) because, as evinced by the affidavit of Wal-Mart's senior tax manager, the sales tax at issue had already been remitted to the state and thus Wal-Mart cannot have been unjustly enriched. Finally, Wal-Mart argued that count III should be dismissed with prejudice pursuant to section 2—615 of the Code because Kean cannot allege any facts entitling her to injunctive relief since Wal-Mart properly collected and remitted the sales tax.

Prior to the disposition of Wal-Mart's dismissal motion, the Illinois Department of Revenue (Department) and then State Treasurer, Judy Baar Topinka, filed a motion to intervene as party defendants (see 735 ILCS 5/2—408(a)(2), (a)(3) (West 2006)), and for leave to file a motion to dismiss Kean's complaint. The circuit court granted both motions.[1] In its dismissal motion, filed under section 2—619(a)(9) of the Code (735 ILCS 5/2—619(a)(9) (West 2006)), the Department argued that Kean failed to follow the statutory procedures for creation of a

---

[1]Alexi Giannoulias, who succeeded Topinka as Treasurer, has been substituted as the named defendant. See 735 ILCS 5/2—1008(d) (West 2006).

protest fund and recovery was therefore barred under Illinois' voluntary payment doctrine.

In response to Wal-Mart's dismissal motion, Kean argued that, in line with the majority of private letter rulings and general information letters issued by the Department, as well as its own regulations, the shipping charges for her internet purchase were separately agreed upon and were not part of Wal-Mart's "selling price" or "gross receipts" on which the sales tax is properly assessed. See 35 ILCS 105/2, 3—10 (West 2006); 35 ILCS 120/1, 2—10 (West 2006); 86 Ill. Adm. Code §§130.410, 130.415 (2009). Though recognizing that Wal-Mart had not filed a summary judgment motion, Kean nonetheless filed a supporting affidavit detailing her internet purchase. As summarized in Kean's response to Wal-Mart's dismissal motion, Kean's internet purchase proceeded as follows:

> "First, [Kean] selected the product at a listed price of $23.33. Next, [Kean] clicked a button agreeing to add the item to 'her electronic shopping cart.' Upon reviewing her cart, [Kean] was provided a subtotal, from which she could proceed to 'checkout.' At 'checkout,' [Kean] was first presented with the option of selecting the destination for her package. After agreeing to a destination, [Kean] was presented with three different options for shipping, while the purchase price remained the same. In other words, none of the three different 'ascertainable delivery charges' affected the price of the product. The options were to pay for 'standard shipping,' ***, '2-3 day shipping,' ***, or '1-day shipping,' ***, all [of] which Wal-Mart represented were the <u>actual</u> costs of shipping.
>
> [Kean] selected the standard delivery option ***, at which time [Kean] agreed to pay for UPS to deliver the product purchased from Wal-Mart to her *** home. *** [Kean] was supplied with a link to a UPS tracking number. When accessed, the link directs the consumer to the UPS tracking site." (Emphasis in original.)

Kean claimed she was overcharged 69.7 cents in sales tax on this transaction.

In her separate response to the Department's dismissal motion, Kean argued that her payment of the sales tax to Wal-Mart was not voluntary. Although Kean argued that the statutory procedure for creation of a protest fund did not apply to her, she nonetheless maintained that she reasonably complied with the statute.

Prior to the circuit court's consideration of the dismissal motions, Chip Russell, a resident of Cook County, filed a petition to intervene as a party plaintiff. See 735 ILCS 5/2—408(a)(2), 2—804(a) (West 2006). In his petition, Russell alleged that on December 5, 2006, he purchased a Leapfrog Leapster Learning System from Wal-Mart's internet store, www.walmart.com, and that Wal-Mart improperly charged him sales tax on the cost of shipping. Based on this purchase, Russell claimed to be a member of Kean's proposed class. Russell argued that his petition should be granted because Kean's representation of the class may be inadequate. Russell stated that, unlike the sales tax Kean paid to Wal-Mart, the sales tax he paid had not yet been remitted to the state. Russell also argued that he complied with the statutory requirements for creation of a protest fund. The circuit court allowed Russell leave to intervene and to file *instanter* his class action complaint, as well as a motion for temporary restraining order and preliminary injunction.

In his class action complaint, Russell set forth the details of his December 5, 2006, internet purchase. Russell alleged that the Leapfrog Leapster Learning System was priced at $59.84. After selecting this item and adding it to his electronic shopping cart, Russell was provided a subtotal. Russell then proceeded to checkout, where he first selected the shipping destination. Russell was presented various shipping options, provided through third-party shippers such as UPS and FedEx. Russell selected the two-to-three-day shipping option, at a cost of

$11.97. Russell alleged that Wal-Mart improperly assessed sales tax on both the item and shipping charges, resulting in an overcharge of $1.07. Russell also alleged that all transactions at walmart.com take this general form; Wal-Mart charges sales tax on all shipping charges of this nature; and in the event a product purchased on the internet is returned to Wal-Mart, the purchaser receives no credit for the cost of shipping, unless the product arrived damaged.

The first three counts of Russell's complaint were substantially identical to the three counts in Kean's complaint with one exception. Whereas Kean sought certification of a multistate class, Russell sought certification of an Illinois class. Russell's complaint also included a fourth count, seeking a declaration that no sales tax, either under ROTA (35 ILCS 120/1 *et seq.* (West 2006)) or the Use Tax Act (35 ILCS 105/1 *et seq.* (West 2006)), may be imposed on the cost of shipping items purchased under the facts alleged.

In the motion that accompanied his complaint, Russell sought a temporary restraining order enjoining Wal-Mart from paying over the disputed sales tax to the state other than under protest; requiring the Director of Revenue to notify the Treasurer that such payments are made under protest; and enjoining the Treasurer from transferring such tax payments into any fund other than the protest fund.

Wal-Mart moved to dismiss Russell's complaint, pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 2006)), relying on the main argument advanced in its motion to dismiss Kean's complaint, *i.e.*, relief under any theory cannot be granted because Wal-Mart properly collected and remitted the sales tax. For similar reasons, Wal-Mart objected to Russell's motion for a temporary restraining order. The Department also moved to dismiss Russell's complaint under section 2—615 of

the Code (735 ILCS 5/2—615 (West 2006)), relying on the argument it advanced in opposition to Russell's motion for a temporary restraining order, namely, that the cost of shipping was properly included in Wal-Mart's taxable "gross receipts" for purposes of ROTA (35 ILCS 120/1 *et seq.* (West 2006)).

On January 17, 2007, the circuit court denied Russell's motion for a temporary restraining order, stating in its written ruling that "it is clear to the court from the language of the relevant statute that the tax here is proper," and thus "there is no likelihood of success on the merits" of Russell's complaint. The circuit court reasoned that because Russell's internet purchase could not be completed without his agreement to have the item shipped, the cost of shipping was part of the "selling price" of the item and was properly included by Wal-Mart in its "gross receipts" when calculating its tax liability under ROTA (35 ILCS 120/1 *et seq.* (West 2006)). Russell immediately filed a notice of appeal, seeking the injunctive relief the circuit court had denied. The appellate court declined to grant a temporary injunction.

After the mandate from the appellate court issued, the circuit court took up the pending dismissal motions. On April 20, 2007, the circuit court granted Wal-Mart's motion to dismiss Kean's complaint with prejudice, for the reasons set forth in its January 17, 2007, order denying Russell's motion for a temporary restraining order. For the same reasons, the circuit court also granted the motions to dismiss with prejudice Russell's complaint. The circuit court declined to rule on the Department's motion to dismiss Kean's complaint. The circuit court explained that, having determined the tax was properly exacted, whether the tax was voluntarily paid, as the Department argued in its dismissal motion, is of no consequence.

Plaintiffs appealed. The appellate court affirmed the judgment of the circuit court, agreeing that the cost of shipping was part of the "selling price" for goods purchased at Wal-Mart's internet store and therefore subject to sales tax under ROTA (35 ILCS 120/1 *et seq.* (West 2006)) and the Use Tax Act (35 ILCS 105/1 *et seq.* (West 2006)). 387 Ill. App. 3d 262. We allowed plaintiffs' petition for leave to appeal. See 210 Ill. 2d R. 315.

## ANALYSIS

A motion to dismiss under section 2—615(a) of the Code (735 ILCS 5/2—615(a) (West 2006)) tests the legal sufficiency of the complaint, whereas a motion to dismiss under section 2—619(a) of the Code (735 ILCS 5/2—619(a) (West 2006)) admits the legal sufficiency of the complaint, but asserts affirmative matter outside the complaint that defeats the cause of action. *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008); *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 578-79 (2006);*Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). Under either section of the Code, our standard of review is *de novo. Solaia Technology*, 221 Ill. 2d at 579.

Whether the circuit court properly dismissed plaintiffs' complaints turns on an issue of statutory construction, also subject to *de novo* review. *Jarvis v. South Oak Dodge, Inc.*, 201 Ill. 2d 81, 86 (2002). We must determine whether, under ROTA and the Use Tax Act, Wal-Mart properly assessed sales tax on the shipping charges for plaintiffs' purchases from Wal-Mart's internet store. When construing these statutes, our primary objective is to ascertain and give effect to the intent of the legislature. Thus, our inquiry begins with the statutory language, the best indicator of legislative intent. *Town & Country Utilities, Inc. v. Illinois Pollution Control Board*, 225 Ill. 2d 103, 117 (2007); *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 202 (1989).

ROTA and the Use Tax Act are complementary, interlocking statutes that comprise the taxation scheme commonly referred to as the Illinois "sales tax." *Union Electric Co. v. Department of Revenue*, 136 Ill. 2d 385, 391 (1990); *Geary v. Dominick's Finer Foods, Inc.*, 129 Ill. 2d 389, 409 (1989); *Hagerty v. General Motors Corp.*, 59 Ill. 2d 52, 55 (1974); *Crane Construction Co. v. Symons Clamp & Manufacturing Co.*, 25 Ill. 2d 521, 527 (1962); see also *Weber-Stephen Products, Inc. v. Department of Revenue*, 324 Ill. App. 3d 893, 898 (2001); 86 Ill. Adm. Code §§150.125, 150.130(b) (2009). Whereas ROTA imposes a tax "upon persons engaged in the business of selling at retail tangible personal property" (35 ILCS 120/2 (West 2006)), the Use Tax Act imposes a tax "upon the privilege of using in this State tangible personal property purchased at retail from a retailer" (35 ILCS 105/3 (West 2006)). If a seller of tangible personal property would not be subject to the retailers' occupation tax, despite all elements of the sale occurring in Illinois, then the tax imposed by the Use Tax Act does not apply to the use of that property in this state. 35 ILCS 105/3—65 (2006); 86 Ill. Adm. Code §§150.101(c), 150.301(b) (2009); *Brown v. Zehnder*, 295 Ill. App. 3d 1031, 1034 (1998). The complementary nature of the two statutes is further exemplified by the Department's incorporation in its Use Tax Act administrative regulations all ROTA regulations which are not incompatible with the Use Tax Act. 86 Ill. Adm. Code §150.1201 (2009).

A retailer's tax liability under ROTA is computed as a percentage of "gross receipts" (35 ILCS 120/2—10 (West 2006)), defined as the "total selling price" (35 ILCS 120/1 (West 2006)). Similarly, the use tax is determined as a percentage of the "selling price." 35 ILCS 105/3—10 (West 2006). The tax rate under ROTA and the Use Tax Act are identical. Compare 35 ILCS 120/2—10 (West 2006) (setting retailers' occupation tax rate at 6.25% of

gross receipts) with 35 ILCS 105/3—10 (West 2006) (setting use tax rate at 6.25% of selling price).

In the usual case, the use tax is collected from the purchaser by the retailer, who must remit the tax to the Department of Revenue. 35 ILCS 105/3—45 (West 2006); *Hagerty*, 59 Ill. 2d at 55. A retailer, however, is relieved of the duty of remitting the use tax it collects if it has paid to the Department the retailers' occupation tax upon the gross receipts from the same sale. 35 ILCS 105/8, 9 (West 2006); 86 Ill. Adm. Code §150.130(b) (2009); *Hagerty*, 59 Ill. 2d at 55; *Weber-Stephen Products*, 324 Ill. App. 3d at 898. Thus, although a single sale and purchase at retail of tangible personal property triggers the imposition of two taxes, one on the retailer and one on the purchaser, only one tax is remitted to the Department, and "the single payment satisfies both taxes." *Department of Revenue ex rel. People of Illinois v. Steinkopf*, 160 Ill. App. 3d 1008, 1014 (1987).

Under this statutory scheme, the sales tax assessed on plaintiffs' internet purchases is a use tax. In light of the interlocking nature of ROTA and the Use Tax Act, however, plaintiffs' challenge to the imposition of a use tax also implicates the retailers' occupation tax. See *Crane Construction Co.*, 25 Ill. 2d at 528. In other words, whether Wal-Mart properly charged and collected a use tax on the shipping charges is dependent upon whether Wal-Mart was taxable under ROTA for the shipping charges. If Wal-Mart was not subject to the retailers' occupation tax for the shipping charges on plaintiffs' internet purchases, then the Use Tax Act does not apply.

Neither ROTA nor the Use Tax Act expressly addresses whether shipping charges of the kind alleged in the complaints are taxable. Both statutes expressly provide, however, that a person's tax liability is computed as a percentage of the "selling price" of the tangible personal property. 35 ILCS 105/3—10 (West 2006); 35

ILCS 120/1, 120/2—10 (West 2006). Thus, as the parties recognize, the issue is whether the shipping charges plaintiffs incurred are properly considered part of the "selling price" of the trampoline and educational toy.

Under ROTA and the Use Tax Act, "selling price" means "the consideration for a sale valued in money *** determined without any deduction on account of the cost of the property sold, the cost of materials used, labor or service cost or any other expense whatsoever." 35 ILCS 120/1 (West 2006); 35 ILCS 105/2 (West 2006). Accord 86 Ill. Adm. Code §150.201(e) (2009). Section 130.410 of the Department's corresponding ROTA regulations clarifies that "the cost of property sold, the cost of materials used, labor or service costs" are all "[c]osts of doing business" which may not be deducted from a retailer's gross receipts or selling price that are subject to the retailers' occupation tax. 86 Ill. Adm. Code §130.410 (2009). The Department's regulations also identify other costs of doing business: "idle time charges, incoming freight or transportation costs, overhead costs, processing charges, clerk hire or salesmen's commissions, interest paid by the seller," and, mirroring the statute, "any other expenses whatsoever." 86 Ill. Adm. Code §130.410 (2009). Though "incoming" freight costs are clearly identified in section 130.410 as a cost of doing business and not deductible from a retailer's taxable gross receipts, "outgoing" shipping charges, such as those at issue here, are addressed separately in section 130.415. See 86 Ill. Adm. Code §130.410(b) (2009) (directing the reader to section 130.415).

Section 130.415, titled "Transportation and Delivery Charges," provides in relevant part:

"(a) Transportation and delivery charges are considered to be freight, express, mail, truck or other carrier, conveyance or delivery expenses. ***

(b) The answer to the question of whether or not a seller, in computing his Retailers' Occupation Tax liability, may

deduct, from his gross receipts from sales of tangible personal property at retail, amounts charged by him to his customers on account of his payment of transportation or delivery charges in order to secure delivery of the property to such customers, or on account of his incurrence of expense in making such delivery himself, depends not upon the separate billing of such transportation or delivery charges or expense, but upon whether the transportation or delivery charges are included in the selling price of the property which is sold or whether the seller and the buyer contract separately for such transportation or delivery charges by not including such charges in such selling price. In addition, charges for transportation and delivery must not exceed the costs of transportation or delivery. If those charges do exceed the cost of delivery or transportation, the excess amount is subject to tax.

(c) If such transportation or delivery charges are included in the selling price of the tangible personal property which is sold, the transportation or delivery expense is an element of cost to the seller within the meaning of Section 1 of the Retailers' Occupation Tax Act, and may not be deducted by the seller in computing his Retailers' Occupation Tax liability.

(d) If the seller and the buyer agree upon the transportation or delivery charges separately from the selling price of the tangible personal property which is sold, then the cost of the transportation or delivery service is not a part of the 'selling price' of the tangible personal property which is sold, but instead is a service charge, separately contracted for, and need not be included in the figure upon which the seller computes his Retailers' Occupation Tax liability. Delivery charges are deemed to be agreed upon separately from the selling price of the tangible personal property being sold so long as the seller requires a separate charge for delivery and so long as the charges designated as transportation or delivery or shipping and handling are actually reflective of the costs of such shipping, transportation or delivery. To the extent that such charges exceed the costs of shipping, transportation or delivery, the charges are subject to tax. The best evidence that transportation or delivery charges were agreed to separately and apart from

the selling price, is a separate and distinct contract for transportation or delivery. However, documentation which demonstrates that the purchaser had the option of taking delivery of the property, at the seller's location, for the agreed purchase price, or having delivery made by the seller for the agreed purchase price, plus an ascertained or ascertainable delivery charge, will suffice." 86 Ill. Adm. Code §130.415 (2009).

The foregoing regulations, like all administrative regulations, are entitled to some weight and deference. *Van's Material Co.*, 131 Ill. 2d at 202-03; *Airey v. Department of Revenue*, 116 Ill. 2d 528, 536 (1987). If, however, an administrative regulation is inconsistent with the statute under which it was adopted, the regulation will be held invalid. See *Hadley v. Illinois Department of Corrections*, 224 Ill. 2d 365, 385 (2007). Plaintiffs do not argue that section 130.415 of the Department's administrative regulations is inconsistent with ROTA or the Use Tax Act or otherwise not entitled to deference by this court. Rather, plaintiffs argue that under section 130.415, the shipping charges at issue here are not part of the selling price and therefore not taxable. We disagree.

Under section 130.415, the primary inquiry is whether the parties separately contracted for shipping. If the buyer and seller separately contracted for shipping, and the charges do not exceed the costs of transportation and delivery, the shipping charges are not considered part of the retailer's gross receipts or selling price and are not subject to the retailers' occupation tax. If the shipping charges exceed the cost, "the excess amount is subject to tax." 86 Ill. Adm. Code §130.415(b) (2009). In the absence of a separate agreement for shipping, the charges must be included in the retailers' gross receipts in computing its tax liability.

Plaintiffs' claims to the contrary notwithstanding, the pleadings disclose no separate agreements for shipping, within the meaning of section 130.415. In each case,

plaintiff selected the item and added it to his or her electronic shopping cart. After being provided a subtotal, each plaintiff proceeded to checkout, and then selected where and when the items would be delivered. After choosing one of the shipping options, plaintiffs were provided an order total. Plaintiffs selected a payment method and then placed their orders. Importantly, plaintiffs could not submit their internet orders unless and until they selected a shipping option. Under these facts, no separate agreement for transportation arose, nor could it. The plaintiffs each entered into a single agreement that necessarily included shipping. Stated differently, the "selling price" for the trampoline or the educational toy could never be the dollar amount reflected in the subtotal; it could only be that amount, plus shipping, because without shipping, the sale and purchase could not be completed. Thus, the "selling price" includes the cost of shipping. Although plaintiffs characterize the shipping charges as "post-sale" charges, this is simply not true.

We are not persuaded by plaintiffs' argument that Wal-Mart's refund policy is indicative of a separate agreement for shipping charges. As set forth in the pleadings, in the event a product ordered at Wal-Mart's internet store is returned, Wal-Mart refunds the price of the item alone. Wal-Mart does not, except in limited situations, refund shipping charges. Plaintiffs maintain that if shipping charges were part of the selling price, then shipping charges would also be refunded. The fact that Wal-Mart chooses not to absorb outgoing shipping costs under its refund policy is not indicative that the parties separately contracted for shipping. Moreover, we agree with the appellate court that Wal-Mart's view of what constitutes the purchase price or selling price of an item for purposes of its refund policy does not control what constitutes the "selling price" for purposes of ROTA or the Use Tax Act. 387 Ill. App. 3d at 270.

In support of their argument that the parties contracted separately for shipping, plaintiffs cite the following provision in section 130.415(d) of the Department's regulations:

"[D]ocumentation which demonstrates that the purchaser had the option of taking delivery of the property, at the seller's location, for the agreed purchase price, or having delivery made by the seller for the agreed purchase price, plus an ascertained or ascertainable delivery charge, will suffice [as evidence of a separate shipping agreement]." 86 Ill. Adm. Code §130.415(d) (2009).

Plaintiffs focus on the conjunction "or" in this regulation, arguing that a purchaser need only have the ability to satisfy one of the two listed conditions to avoid taxation. Plaintiffs continue that, because they were able to satisfy the latter condition, *i.e.*, they were able to have "delivery made by the seller for the agreed purchase price, plus an ascertained or ascertainable delivery charge," the shipping charges are not taxable. Like the appellate court, we reject plaintiffs' construction of this regulation. See 387 Ill. App. 3d at 273-74.

Because administrative regulations have the force and effect of law, the familiar rules that govern construction of statutes also apply to the construction of administrative regulations. *M.A.K. v. Rush-Presbyterian-St. Luke's Medical Center*, 198 Ill. 2d 249, 257 (2001). One such familiar rule is that a statute should be construed, if possible, so that no word is rendered meaningless or superfluous. *M.A.K.*, 198 Ill. 2d at 257. Under plaintiffs' construction of section 130.415(d), the word "option" is rendered superfluous. The regulation clearly indicates that evidence of a separate shipping agreement exists where the purchaser had the "option" of either purchasing the product and picking it up at the seller's location, or purchasing the product and having it delivered at an additional cost. The word "option" is indicative of "choice." See Webster's Third New International Dictio-

nary 1585 (1993). Under plaintiffs' reading, however, evidence of a separate agreement would exist whether or not any choice was involved.

Here, the pleadings indicate that plaintiffs did not have the option of buying the product on the internet and picking it up at a brick and mortar Wal-Mart, or buying the product on the internet and having delivery made for an additional charge. If plaintiffs wanted to purchase the products from Wal-Mart's internet store, they were required to have the products delivered. Under section 130.415(d), this absence of choice is indicative that the shipping charges were part of the taxable selling price, rather than the subject of a separate agreement.

Plaintiffs argue that this conclusion, urged by the Department, is inconsistent with information posted on the Department's Web site. The scope of our review does not extend to a determination as to whether information posted on the Department's Web site is consistent with the Department's own administrative regulations. Moreover, unlike the Department's administrative regulations, which carry the force and effect of law (*Union Electric Co.*, 136 Ill. 2d at 391), information posted on the Department's Web site does not and has no precedential effect. We have, nonetheless, reviewed the Department's online statements to which plaintiffs refer and note that they provide a very abbreviated response to the question of whether shipping and handling charges are taxable, picking up language from section 130.415, but ultimately directing the reader to that regulation for further information.

Plaintiffs also argue that if the shipping charges on their internet purchases are taxable because the purchases could not be made without having the merchandise delivered, then shipping charges on mail order transactions would also be taxable. Plaintiffs maintain, however, that the Department has already determined

that shipping charges on mail order transactions are *not* taxable. In support, plaintiffs cite several letter rulings issued by the Department, in which it advises specific taxpayers that mail order delivery charges are generally deemed to be agreed upon separately from the selling price of the property being sold. See, *e.g.*, Private Letter Ruling No. ST—01—0230—GIL, 2001 Ill. PLR Lexis 276; Private Letter Ruling No. ST—99—0327—GIL, 1999 Ill. PLR Lexis 439; Private Letter Ruling No. ST—99—0024—GIL, 1999 Ill. PLR Lexis 70. Plaintiffs also cite a prior version of section 130.415 to the same effect. See 15 Ill. Reg. 6621, eff. April 17, 1991 (amending 86 Ill. Adm. Code §130.415).

As explained in the Department's administrative regulations, "[p]rivate letter rulings are issued by the Department in response to specific taxpayer inquiries concerning the application of a tax statute or rule to a particular fact situation. Letter rulings are binding on the Department only as to the taxpayer who is the subject of the request for ruling." 2 Ill. Adm. Code §1200.110(a) (2009). Private letter rulings typically have no precedential effect. *Union Electric Co.*, 136 Ill. 2d at 400. Notwithstanding their designation on a legal Web site as "private letter rulings," the documents plaintiffs cite are not, in fact, "private letter rulings." Rather, as expressly stated within the body of each document, they are "general information letters." Pursuant to the Department's regulations,

"[g]eneral information letters do not constitute statements of agency policy that apply, interpret or prescribe the tax laws administered by the Department. Information letters are not binding on the Department, may not be relied upon by taxpayers in taking positions with reference to tax issues and create no rights for taxpayers under the Taxpayers' Bill of Rights Act." 2 Ill. Adm. Code §1200.120(c) (2009).

In addition to their nonbinding nature, the general information letters plaintiffs cite merely reflect what had been the Department's position on mail order transactions, as set forth in a prior version of section 130.415(d). That version stated, in relevant part:

"Mail order delivery charges are deemed to be agreed upon separately from the selling price of the tangible personal property being sold so long as the mail order form requires a separate charge for delivery and so long as the charges designated as transportation or delivery or shipping and handling are actually reflective of the costs of such shipping, transportation or delivery. To the extent that such charges exceed the costs of shipping, transportation or delivery, the charges are subject to tax." 15 Ill. Reg. 6621, 6677-78, eff. April 17, 1991 (amending 86 Ill. Adm. Code §130.415).

This regulation was amended, effective October 2, 2000, by deleting the mail order specific references. The regulation, quoted in full earlier in this opinion, now refers simply to "delivery charges," without identifying any particular delivery charges. See 24 Ill. Reg. 15104, 15173-74, eff. October 2, 2000 (amending 86 Ill. Adm. Code §130.415).

Plaintiffs argue that the elimination of references to mail order transactions constitutes a broadening by the Department of the nontaxability of delivery charges beyond the mail order scenario. Plaintiffs posit that the lower courts were required to give deference to the Department's determination concerning mail order transactions and should have determined that the shipping charges at issue here, like the mail order delivery charges, are not taxable.

We agree that the Department's regulations are entitled to some deference and weight. *Van's Material Co.*, 131 Ill. 2d at 202-03; *Airey*, 116 Ill. 2d at 536. Nonetheless, courts are not required to give deference to a regulation that is no longer valid. To the extent the former version of section 130.415(d) informs our interpre-

tation of the current version of this regulation, we disagree with plaintiffs that the elimination of the mail order specific language signals not only a retention of the nontaxability of mail order delivery charges, but also a broadening of the nontaxability of delivery charges generally. Rather, elimination of the mail order specific language in section 130.415(d) is indicative that delivery charges on mail order transactions should not be treated any differently than the delivery charges on other transactions.

In any event, the Department's regulations, however they are amended, must be consistent with ROTA, the statute under which they are promulgated. See *Hadley*, 224 Ill. 2d at 371, 385. Administrative regulations can neither expand nor limit the statute they enforce. *Outcom, Inc. v. Department of Transportation*, 233 Ill. 2d 324, 340 (2009). Under ROTA, "selling price" means "the consideration for a sale valued in money *** determined without any deduction on account of the cost of the property sold, the cost of materials used, labor or service cost *or any other expense whatsoever.*" (Emphasis added.) 35 ILCS 120/1 (West 2006). In *Leslie Car Wash Corp. v. Department of Revenue*, 69 Ill. 2d 488 (1978), this court considered the scope of this statutory language.

At issue in *Leslie Car Wash* was whether a company, which provided its gasoline-buying customers with discounts on its car-wash price, could deduct the car-wash discounts from its gross receipts from the sale of gasoline for purposes of determining its tax liability under ROTA. We concluded that the company's practice of deducting the discounts from its gasoline sales was "contrary to the broad definition of 'gross receipts' embracing, as it does, labor, service, costs and 'other expenses.' " *Leslie Car Wash*, 69 Ill. 2d at 491. We observed:

> "Human ingenuity, understandably enough, functions at its optimum whenever tax problems are concerned.

While this case presents fascinating implications, the taxpayer cannot claim originality in his arguments. In commenting upon the definition of the term 'selling price,' this court as long ago as 1942 in *Vause & Striegel, Inc. v. McKibbin* (1942), 379 Ill. 169, 172, stated:

> 'The language employed is not only free from ambiguity but is specific to the effect that the "selling price" or the "amount of a sale" is to be determined without any deduction on account of the cost of the property sold, the cost of materials used, labor or service cost, or "any other expense whatsoever." These words are all-embracing in their scope. (*Gee Coal Co. v. Department of Finance*, 361 Ill. 293.) The obvious meaning of the expression "any other expense whatsoever" precludes the deduction which plaintiffs seek to make in determining their selling price for tax purposes.' "

*Leslie Car Wash*, 69 Ill. 2d at 492.

*Leslie Car Wash* makes plain that the legislature intended, through its "broad" definition of selling price and "all-embracing" language, to limit the deductions a retailer can take when determining its taxable selling price under ROTA. The Department's regulations, in turn, must give effect to the legislature's intent. Plaintiffs' construction of section 130.415 of the Department's regulations, however, would expand the permissible deductions a retailer can take and is thus at odds with the statutory language.

Plaintiffs further argue that ROTA and the Use Tax Act, by their plain terms, impose a tax on retailers and users of "tangible personal property" and not "services." See 35 ILCS 120/2 (West 2006); 35 ILCS 105/3 (West 2006). Plaintiffs continue that because taxing statutes must be strictly construed and not extended or enlarged beyond their clear import (see *Van's Material Co.*, 131 Ill. 2d at 202), the delivery services at issue here are not taxable.

Though no dispute exists that service occupations are beyond the reach of ROTA, the line between the provi-

sion of a nontaxable service and a taxable retail sale of tangible personal property is not always clear. In determining where that line should be drawn, Illinois courts consider whether the service is an "inseparable" or "indispensable" part of the retail sale. See, *e.g.*, *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 389 (1983); *Snite v. Department of Revenue*, 398 Ill. 41, 46 (1947); *Airco Industrial Gas Division, The BOC Group, Inc. v. Department of Revenue*, 223 Ill. App. 3d 386, 392 (1991); *Terrace Carpet Co. v. Department of Revenue*, 46 Ill. App. 3d 84, 89 (1977); *Gapers, Inc. v. Department of Revenue*, 13 Ill. App. 3d 199, 203 (1973).

To illustrate, in *Material Service Corp.*, we considered whether a minimum load charge, uniformly collected on small sales of ready-mix concrete, should be included in the company's selling price for the load for purposes of computing its tax liability under ROTA. Evidence was presented that the required charge was related to the cost of providing drivers and maintaining the ready-mix trucks. Delivery in the ready-mix trucks was necessary to prevent hardening of the mixture prior to use. We agreed with the Department that the charge was "an inseparable part of a single transaction—the sale and delivery of pre-mixed concrete." *Material Service Corp.*, 98 Ill. 2d at 388-89. In reaching this conclusion, we cited with approval *Gapers, Inc. v. Department of Revenue*, 13 Ill. App. 3d 199 (1973).

In *Gapers*, the appellate court considered whether a home catering business could deduct its delivery charges, which appeared as a separate line item on its customer invoices, from its taxable gross receipts under ROTA. The appellate court held that, pursuant to the statutory definition of "selling price," the deduction attempted by the catering company was forbidden. *Gapers*, 13 Ill. App. 3d at 202, citing *Vause & Striegel, Inc. v. McKibbin*, 379 Ill. 169, 172 (1942). The appellate court agreed with the

Department that delivery was " 'an inseparable link in the chain of events leading to the completion of the sale' " and not merely incidental to the catering company's business. *Gapers*, 13 Ill. App. 3d at 203. Thus, including the delivery charge in the taxable selling price was both reasonable and logical. *Gapers*, 13 Ill. App. 3d at 203.

The appellate court's opinion in *Airco Industrial Gas Division* provides further insight into when an inseparable link exists between a service and a retail sale of tangible personal property. *Airco* involved a business which manufactured and sold industrial gases. To take delivery of the gases, customers needed insulated storage tanks and/or vaporing equipment on their premises, depending upon whether the gas would be used in liquid or gaseous form. Customers were given the option of purchasing their own storage tanks and vaporizing equipment or renting the tanks and equipment from the manufacturer. Rental fees appeared as a separate item in the bulk product agreement. The Department argued that under the *Gapers* line of cases, the rental fee was a necessary cost of completing the sale and should be included in the manufacturer's gross receipts under ROTA. The manufacturer argued that the best method for distinguishing between a nontaxable service and a taxable service is to ask, " 'Can the product that the customer has agreed to buy be sold to the customer without rendering the service?' If 'yes,' then the service should not be included in the selling price of the sale of tangible personal property." *Airco*, 223 Ill. App. 3d at 392. The appellate court agreed with the manufacturer:

> "[T]he most important element of the situation here is that plaintiff's customers are not required to rent equipment from it but can purchase and use their own if they wish. Accordingly, we hold that for this reason no 'inseparable link' exists between the sale of the gas and the furnishing of the storage facilities." *Airco*, 223 Ill. App. 3d at 392-93.

Based on these authorities, we agree with Wal-Mart and the Department that an "inseparable link" exists between the sale and delivery of the merchandise plaintiffs purchased from Wal-Mart's internet store. Unlike *Airco*, where the service component was optional, here, plaintiffs were required to buy the delivery service. As Wal-Mart states, "plaintiffs could not click their mouse to complete the transaction unless they chose a delivery option."

Plaintiffs argue that they could have purchased the items at a brick and mortar Wal-Mart or another retailer, without incurring shipping charges, thus demonstrating that the shipping charges here are not inseparably linked to the sale of the goods. Plaintiffs also posit that Wal-Mart could have sold these products online and then advised purchasers to arrange for shipping themselves, again demonstrating that the sale and delivery of the goods are not inseparably linked. We disagree. The transactions at issue here, as alleged in plaintiffs' complaints, consist of purchases from Wal-Mart's internet store. We are not concerned with other hypothetical transactions. Thus, whether plaintiffs could have purchased the same items elsewhere without a delivery or shipping charge, or whether Wal-Mart could have set up its internet store differently, is irrelevant to the question before us, namely, whether plaintiffs could have purchased the items from Wal-Mart's internet store without also buying delivery. The answer to that question is "no."

Finally, we reject plaintiffs' argument that the "inseparable link" rule is inapplicable where, as here, a third party performs the delivery or other service at issue, rather than the retailer. As the appellate court stated, "whether the truck arriving at a customer's doorstep bears a Wal-Mart or a UPS label" is irrelevant. 387 Ill. App. 3d at 270. The crucial factor is whether the service came in a "package" with the goods being

purchased, rather than "an either-or basis." 387 Ill. App. 3d at 270. Moreover, we note that section 130.415 of the Department's regulations expressly contemplates the situation present here, where a third party, and not the retailer, provides delivery services for which the retailer charges the customer. 86 Ill. Adm. Code §130.415(b). Accordingly, we decline to limit application of the inseparable link rule in the manner plaintiffs urge.

## CONCLUSION

For the reasons stated, we hold that the shipping charges for plaintiffs' purchases from Wal-Mart's internet store were properly included in the "selling price" under ROTA and the Use Tax Act, and that Wal-Mart properly charged and collected sales tax on the shipping charges. Accordingly, we affirm the judgment of the appellate court affirming the dismissal of plaintiffs' complaints.

*Affirmed.*

JUSTICE FREEMAN took no part in the consideration or decision of this case.