2012 IL App (4th) 111117

NO. 4-11-1117

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 31, 2012
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| MICHAEL GILLICK, | ) | Appeal from |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| MICHELLE R.B. SADDLER, Secretary, The | ) | No. 11L41 |
| Department of Human Services; and DAN | ) | |
| RUTHERFORD, Treasurer, the State of Illinois, | ) | Honorable |
|     Defendants-Appellees. | ) | Patrick W. Kelley, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE TURNER delivered the judgment of the court, with opinion.

Justices Steigmann and Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1    In July 2009, a federal arbitration panel awarded $237,207.11 to plaintiff, Michael Gillick, and the sum was remitted to defendant, Michelle R.B. Saddler, Secretary of the Department of Human Services (DHS), as custodian and trustee. Saddler withheld $53,991.67 and remitted the balance to plaintiff. In July 2011, plaintiff filed an amended complaint for writ of *mandamus* against Saddler and defendant, Dan Rutherford, Treasurer of the State of Illinois, demanding the withheld funds be paid to plaintiff. In August 2011, defendants filed a motion to dismiss, which the trial court granted.

¶ 2    On appeal, plaintiff argues the trial court erred in granting defendants' motion to dismiss. We affirm.

¶ 3    I. BACKGROUND

¶ 4 "For the purposes of providing blind persons with remunerative employment, enlarging the economic opportunities of the blind, and stimulating the blind to greater efforts in striving to make themselves self-supporting," the Randolph-Sheppard Vending Stand Act (Act) (20 U.S.C. §§ 107 through 107f (2006)) authorizes blind persons licensed under the Act to operate vending facilities on federal property. 20 U.S.C. § 107a(a)(5) (2006). The Act gives blind vendors a preference in the creation of new vending facilities on federal property (20 U.S.C. § 107a(b) (2006)) and also requires a percentage of income derived from vending machines located on federal property to be turned over for the benefit of blind vendors (20 U.S.C. § 107d-3 (2006)).

¶ 5 The size of the contribution depends on whether a vending facility is in direct or indirect competition with a licensed blind vendor. 20 U.S.C. § 107d-3(b)(1) (2006). For example, all income from vending machines in direct competition with a blind vendor is redistributed to blind vendors, while half the income from vending machines that are not in direct competition with a blind vendor accrues to blind vendors. 20 U.S.C. § 107d-3(b)(1) (2006).

¶ 6 The blind vendor program is administered jointly by the federal government and the states. At the federal level, the Rehabilitation Services Administration within the Department of Education administers the Act. 20 U.S.C. § 107a(a)(1) (2006). At the state level, participating states are responsible for the licensing of the vending facility operation and to "give preference to blind persons who are in need of employment." 20 U.S.C. § 107a(b) (2006). In Illinois, the Business Enterprise Program for the Blind, a division of DHS, serves as the licensing agency under the Blind Vendors Act (20 ILCS 2421/10 (West 2010)).

¶ 7 Plaintiff is a blind vendor licensed under the Act and has operated vending

facilities at the United States Postal Service's processing and distribution center in Chicago. His permits allowed him to operate four breakrooms with a total of 13 vending machines on the third floor of the center. Also located on the third floor is an employee cafeteria operated by a private company, Ace Coffee Bar, under contract with the Postal Service. In May 2004, plaintiff complained to DHS that he was harmed by competition with the coffee bar, which operated 17 vending machines in two locations in the cafeteria, including the rotunda area.

¶ 8       In November 2004, plaintiff filed a grievance against DHS, arguing the State licensing agency had failed to adequately protect his interests in the vending facility and had failed to act against the Postal Service for its violations of the Act. After reviewing plaintiff's grievance, DHS agreed with him and determined it should join in filing a complaint with the Department of Education against the Postal Service.

¶ 9       In September 2006, DHS filed a complaint against the Postal Service requesting federal arbitration. In July 2009, the arbitration panel found the vending machines operated by Ace Coffee Bar were in direct competition with plaintiff and were subject to 100% income sharing under section 107d-3(b) (20 U.S.C. § 107d-3(b)(1) (2006)). The panel ordered the Postal Service "to recompense [DHS] to disburse in accordance with 34 CFR [§] 395.32 the following amount: 100% of the vending machine income sharing for all of the vending machines located in the rotunda and in the cafeteria at the USPS Chicago Processing and Distribution Center from September 21, 2006 on."

¶ 10       Pursuant to federal regulation, the Postal Service was required to submit the income sharing directly to DHS. 34 C.F.R. § 395.32(b) (2010). DHS was then required to disburse that income to plaintiff. 34 C.F.R. § 395.32(b) (2010). Specifically, the regulation

stated DHS was to disburse 100% of the vending machine income to plaintiff "provided that the total amount of such income accruing to such blind vendor does not exceed the maximum amount determined under § 395.8(a)." 34 C.F.R. § 395.32(b) (2010). "In the event that there is income from such vending machines in excess of the maximum amount which may be disbursed to the blind vendor under § 395.8(a), such additional income shall accrue to the State licensing agency for purposes determined in accordance with § 395.8(c)." 34 C.F.R. § 395.32(b) (2010). Under section 395.8(c), vending machine income retained by the state licensing agency is required to be used "for the establishment and maintenance of retirement or pension plans, for health insurance contributions, and for the provision of paid sick leave and vacation time for blind vendors." 34 C.F.R. § 395.8(c) (2010).

¶ 11　　　　　Plaintiff was awarded the sum of $237,207.11, which was remitted to defendant Saddler as custodian and trustee for plaintiff's benefit. Saddler withheld the sum of $53,991.67 and remitted the balance of $183,215.44 to plaintiff. DHS deposited the $53,991.67 into the federal reserve account.

¶ 12　　　　　In February 2011, plaintiff filed a complaint in the circuit court against Saddler, claiming he was entitled to the entire sum of $237,207.11 plus interest in that the funds consti-tuted " '100% of the vending machine income sharing for all of the vending machines located' in the USPS Chicago Processing and Distribution Center wherein Plaintiff operates his vending business." Plaintiff asked that Saddler be required to pay him $53,991.67 plus interest.

¶ 13　　　　　In March 2011, defendant Saddler filed a motion to dismiss pursuant to sections 2-619(a)(1) and (a)(9) of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-619(a)(1), (a)(9) (West 2010)). Saddler claimed plaintiff's matter was barred by the doctrine of sovereign

immunity, as the action sought a monetary judgment against the State. In July 2011, the trial court granted the motion to dismiss but granted plaintiff 30 days to file an amended complaint.

¶ 14       In July 2011, plaintiff filed an amended complaint for writ of *mandamus* and other relief against defendants Saddler and Rutherford. Plaintiff alleged $53,991.67 was deposited by Saddler into the Vocational Rehabilitation Fund under the jurisdiction of the State Treasurer. See 20 ILCS 2405/5a (West 2010). The subject funds were not part of the general revenue fund of Illinois. Plaintiff claimed he was legally entitled to receipt of the funds and sought an order of *mandamus* directing defendants to disburse to him the sum of $53,991.67. Plaintiff also sought a second order of *mandamus* requiring an additional $123,900 in compensation for the loss of income sharing from 2004, when he first objected to competition from a private vendor, to 2006 when he filed his complaint against the Postal Service.

¶ 15       In August 2011, defendants filed a combined motion to dismiss under sections 2-615 and 2-619 of the Procedure Code (735 ILCS 5/2-615, 2-619 (West 2010)). Defendants argued plaintiff did not have a legal right to the requested funds and could not establish either defendant had a clear legal duty to disburse additional money to him.

¶ 16       In November 2011, the trial court granted defendants' motion to dismiss. In a docket entry, the court found "34 C.F.R. [§] 395.8(a) requires Defendants to withhold the funds at issue under the circumstances in this case." As defendants' actions were proper, the court found plaintiff did not have a cause of action for *mandamus*.

¶ 17       Plaintiff filed a motion to reconsider. In December 2011, the trial court denied the motion. This appeal followed.

¶ 18                                    II. ANALYSIS

¶ 19    In arguing the trial court erred in granting defendants' motion to dismiss, plaintiff claims he is entitled to a writ of *mandamus* compelling defendants to turn over the additional $53,991.67 in vending machine income.  We disagree.

¶ 20    A. *Mandamus*

¶ 21    "*Mandamus* is an extraordinary remedy traditionally used to compel a public official to perform a ministerial duty."  *People ex rel. Madigan v. Snyder*, 208 Ill. 2d 457, 464, 804 N.E.2d 546, 552 (2004).  A petition for *mandamus* will be granted " 'only if a plaintiff establishes a clear, affirmative right to relief, a clear duty of the public official to act, and a clear authority in the public official to comply with the writ.' "  *Hadley v. Montes*, 379 Ill. App. 3d 405, 407, 883 N.E.2d 703, 705 (2008) (quoting *People ex rel. Ryan v. Roe*, 201 Ill. 2d 552, 555, 778 N.E.2d 701, 703 (2002)).  The plaintiff bears the burden of demonstrating a clear, legal right to the requested relief and must set forth every material fact necessary to prove he is entitled to a writ of *mandamus*.  *Lucas v. Taylor*, 349 Ill. App. 3d 995, 998, 812 N.E.2d 72, 75 (2004) (citing *Chicago Ass'n of Commerce & Industry v. Regional Transportation Authority*, 86 Ill. 2d 179, 185, 427 N.E.2d 153, 156 (1981)).

¶ 22    B. Standard of Review

¶ 23    Section 2-619.1 of the Procedure Code (735 ILCS 5/2-619.1 (West 2010)) permits a defendant to file a combined motion to dismiss pursuant to sections 2-615 and 2-619 of the Procedure Code (735 ILCS 5/2-615, 2-619 (West 2010)).  A section 2-615 motion to dismiss "tests the legal sufficiency of the complaint," while a section 2-619(a) motion "admits the legal sufficiency of the complaint, but asserts affirmative matter outside the complaint that defeats the cause of action."  *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361, 919 N.E.2d 926, 931-32

(2009). This court reviews the dismissal under either section *de novo*. *Kean*, 235 Ill. 2d at 361, 919 N.E.2d at 932.

¶ 24 Moreover, this case presents us with the interpretation of various statutes and regulations. The interpretation of agency regulations is a question of law, and our review is *de novo*. *Walk v. Department of Children & Family Services*, 399 Ill. App. 3d 1174, 1181, 926 N.E.2d 773, 779 (2010). Courts interpret an administrative regulation in the same manner as it would interpret a statute. *Kean*, 235 Ill. 2d at 368, 919 N.E.2d at 936. "Thus, our primary aim is to give effect to the drafters' intent, and the best indicator of that intent is the regulation's language given its plain and ordinary meaning." *Arellano v. Department of Human Services*, 402 Ill. App. 3d 665, 673, 943 N.E.2d 631, 638 (2010).

¶ 25 C. Vending Machine Income and Disbursement Under the Act and Regulations

¶ 26 Plaintiff's amended complaint sought enforcement of the arbitration panel's order. Therein, the panel ordered the Postal Service to recompense DHS to disburse (in accordance with 34 C.F.R. § 395.32(b) (2010)) 100% of the vending machine income sharing for all of the vending machines from September 21, 2006, on. Plaintiff does not dispute that the full amount of $237,207.11 directed by the arbitration panel was remitted to the State of Illinois. Instead, and in addition to the $183,215.44 he received, plaintiff claims defendants had a clear statutory duty to cause to be paid to him the sum of $53,991.67. The main issue in this appeal is whether DHS complied with its obligation to disburse the vending machine income sharing in accordance with the applicable federal statutes and regulations. See 20 U.S.C. § 107d-3(b) (2006) and 34 C.F.R. §§ 395.8, 395.32 (2010).

¶ 27 Section 395.32(b) of title 34 of the Code of Federal Regulations provides as

follows:

"Effective January 2, 1975, 100 per centum of all vending machine income from vending machines on Federal property which are in direct competition with a vending facility operated by a blind vendor shall accrue to the State licensing agency which shall disburse such income to such blind vendor operating such vending facility on such property provided that the total amount of such income accruing to such blind vendor does not exceed the maximum amount determined under § 395.8(a).  In the event that there is income from such vending machines in excess of the maximum amount which may be disbursed to the blind vendor under § 395.8(a), such additional income shall accrue to the State licensing agency for purposes determined in accordance with § 395.8(c)."  34 C.F.R. § 395.32(b) (2010).

According to section 395.8(a) of title 34 of the Code of Federal Regulations (34 C.F.R. § 395.8(a) (2010)), the vending machine income that has been disbursed to the state licensing agency shall accrue to each blind vendor "in an amount not to exceed the average net income of the total number of blind vendors within such State ***."

¶ 28        As stated, the arbitration panel specified the disbursement of vending machine income to plaintiff was to be done in accordance with section 395.32 of title 34 of the Code of Federal Regulations (34 C.F.R. § 395.32 (2010)).  While plaintiff is correct that section 395.32 states 100% of the vending machine income shall be disbursed to the blind vendor, the regulation

goes on to state the income shall be disbursed "provided that the total amount of such income accruing to such blind vendor does not exceed the maximum amount determined under § 395.8." Thus, based on the language of the regulation, it is clear the income disbursed to the blind vendor cannot exceed a "maximum amount."

¶ 29       When looking at section 395.8 of title 34 of the Code of Federal Regulations (34 C.F.R. § 395.8(a) (2010)), vending machine income is to accrue to the blind vendor "in an amount not to exceed the average net income of the total number of blind vendors within such State ***." Thus, construing these regulations together, the arbitration panel awarded plaintiff income not to exceed the average net income of the total number of blind vendors within Illinois. According to calculations provided to the administrator of the Business Enterprise Program for the Blind, the $183,215.44 amounted to plaintiff's portion of the award "based on the lower of the National, State, or Actual manager's monthly income average for the time periods of September 2006 through February 2010." Plaintiff has not disputed he received income sharing consistent with these calculations.

¶ 30       We note the regulations set forth what state licensing agencies are to do with the excess amount. Any vending machine income retained by the state licensing agency under subsection (a) "shall be used by such agency for the establishment and maintenance of retirement or pension plans, for health insurance contributions, and for the provision of paid sick leave and vacation time for blind vendors in such State ***." 34 C.F.R. § 395.8(c) (2010). Thus, it is clear from the regulations that, while blind vendors are generally entitled to 100% of the income sharing, there are limits to the total amount received and directions where any excess is to be utilized.

¶ 31    The Act allows for a ceiling on vending machine income that accrues to a blind vendor. 20 U.S.C. § 107d-3(b) (2006). Any amount over and above the ceiling that is received by the state licensing agency is to be disbursed for specified purposes relating to retirement or pension plans, health-insurance contributions, sick leave, and vacation time. 20 U.S.C. § 107d-3(c) (2006). According to the Act's implementing regulations, which the arbitration panel relied on, plaintiff was only entitled to the portion of the vending machine income sharing he received. Thus, defendants were not required to disburse the $55,991.67 in vending machine income to plaintiff. Accordingly, we find the trial court did not err in granting defendants' motion to dismiss his amended complaint for *mandamus*.

¶ 32                III. CONCLUSION

¶ 33    For the reasons stated, we affirm the trial court's judgment.

¶ 34    Affirmed.