# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Workforce Solutions v. Urban Services of America, Inc.*, 2012 IL App (1st) 111410

---

| | |
|---|---|
| Appellate Court Caption | WORKFORCE SOLUTIONS, an Illinois Not-for-Profit Company, Plaintiff and Judgment Creditor-Appellant, v. URBAN SERVICES OF AMERICA, INC., an Illinois Corporation, Defendant and Judgment Debtor (The Services Group, LLC, a Delaware Limited Liability Company, c/o Steven Fenzl and/or Doug Ritter as Members and/or Managers; Gordon McTavish, as Director of Urban Services of America, Inc., an Illinois Corporation; USA Franchising, LLC, a Delaware Limited Liability Company, c/o Steven Fenzl as Member and/or Manager; and Doug Ritter, Third-Party Citation Respondents-Appellees).–WORKFORCE SOLUTIONS, an Illinois Not-for-Profit Company, Plaintiff-Appellant, v. THE SERVICES GROUP, LLC, a Delaware Limited Liability Company; GORDON MCTAVISH; STEVEN FENZL; DOUG RITTER; RON SWANE; USA FRANCHISING, LLC, a Delaware Limited Liability Company; DRADER MANUFACTURING INDUSTRIES, LTD., a Canadian Corporation, EDCAN, INC., an Arizona Corporation; UNIQUED, LLC, an Illinois Limited Liability Company; CANDO SERVICES MIDWEST, LLC, a Delaware Limited Liability Company; CANDO SERVICES WEST, LLC, a Delaware Limited Liability Company; and CANDO SERVICES PACIFIC NORTHWEST, LLC, a Delaware Limited Liability Company, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket Nos. 1-11-1410, 1-11-3046 cons. |
| Filed | August 28, 2012 |

**Held**

(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*)

In proceedings arising from plaintiff's attempt to collect a judgment entered against defendant, the denial of one count of plaintiff's motion for the turnover of assets held by a citation respondent managed by some of the same individuals who controlled defendant was reversed on the ground that the trial court failed to conduct an evidentiary hearing on the ownership of the assets at issue; the second count was reversed due to the trial court's failure to apply the discovery rule in determining whether the claim was timely; the counts alleging breach of the duty of disclosure and candor or fraudulent concealment against entities related to defendant were properly dismissed; and the dismissal of the counts against those entities alleging fraudulent transactions, breach of fiduciary duty and successor liability was reversed.

Decision Under Review

Appeal from the Circuit Court of Cook County, Nos. 06-L-003551, 10-L-008380; the Hon. Elmer J. Tolmaire III and the Hon. Ronald F. Bartkowicz, Judges, presiding.

Judgment

No. 1-11-1410, Reversed and remanded.

No. 1-11-3046, Affirmed in part and reversed in part; cause remanded.

Counsel on Appeal

Kenneth J. Ashman and Neal D. Kitterlin, both of Ashman Law Offices, LLC, of Chicago, for appellant.

David E. Morrison and Kerry D. Nelson, both of Goldberg Kohn Ltd., of Chicago, for appellees.

Panel

JUSTICE CONNORS delivered the judgment of the court, with opinion.

Presiding Justice Quinn and Justice Harris concurred in the judgment and opinion.

**OPINION**

¶ 1      This consolidated appeal arises out of the efforts by plaintiff and judgment creditor, Workforce Solutions, to collect on a judgment entered in its favor following a breach of contract action filed against defendant and judgment debtor, Urban Services of America. In a supplementary proceeding, the circuit court denied Workforce's motion for turnover of assets asserted against third-party citation respondents. It determined that one count of the

motion was barred by the statute of limitations and the second count was denied because Workforce failed to prove that the entity held assets that could be applied toward Workforce's judgment.

¶ 2 In a separate action, Workforce filed a complaint directly against Urban and the third parties named in the supplementary proceeding. It asserted claims for fraudulent transfer, breach of fiduciary duty, successor liability, breach of the duty of disclosure and candor, fraudulent concealment, piercing the corporate veil, and alter ego. The circuit court dismissed all but the last two counts of the complaint with prejudice. Workforce now appeals from the denial of its motion for turnover and the dismissal of five counts of its complaint. For the following reasons, we reverse the circuit court's denial of the motion for turnover and remand for further proceedings. We also reverse dismissal of counts I, II, and V of the direct action against Urban and related entities and affirm dismissal of counts VI and VII.

¶ 3                                             BACKGROUND

¶ 4 In 2003, Workforce and Urban entered into a contract whereby Workforce provided contract employees to Urban to operate municipal recycling facilities. Urban fell behind on its payments to Workforce. After failed attempts to collect past-due payments, Workforce filed a breach of contract action against Urban in 2006. In June and July of 2008, Workforce obtained default judgments against Urban totaling $1,026,720.10. With statutory interest, the judgment owed to Workforce totaled nearly $1.4 million.

¶ 5 In October of 2008, Workforce instituted supplementary proceedings pursuant to section 2-1402 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-1402 (West 2008)). Under that statute, Workforce had citations to discover assets issued to Urban, as judgment debtor, and to numerous third-party citation respondents, which were corporate entities related to Urban. In January of 2010, after two years of discovery, Workforce filed a motion for turnover of certain assets under the control of USA Franchising (USAF) and The Services Group (TSG) that it believed should satisfy the judgment on Urban's behalf. The turnover claims were brought under the Illinois Uniform Fraudulent Transfer Act (Act) (740 ILCS 160/1 *et seq.* (West 2008)).

¶ 6 The circuit court denied the turnover motion. The court found that the claim against USAF was untimely or "extinguished" under section 10 of the Act. 740 ILCS 160/10 (West 2008). Additionally, the court found that Workforce failed to produce evidence that TSG held any assets that could be applied to satisfy the judgment.

¶ 7 At about the same time Workforce filed its turnover motion, it also commenced a new action against Urban, USAF, TSG and related entities, and the officers and directors of those entities. Workforce asserted seven counts against the defendants for fraudulent transfer, breach of fiduciary duty, successor liability, breach of the duty of disclosure and candor, "fraudulent concealment," piercing the corporate veil, and alter ego. The circuit court dismissed the piercing and alter ego claims without prejudice. It dismissed the remaining counts with prejudice for a variety of reasons, some of which were based on the court's findings in the turnover proceeding. The details of the claims' disposition will be discussed further below.

¶ 8 Workforce filed timely notices of appeal in each case. Pursuant to motion, this court consolidated the appeals. We will analyze each case in turn.

¶ 9 A. Appeal No. 1-11-1410 (Supplementary Proceedings)

¶ 10 1. Facts

¶ 11 After obtaining a judgment against Urban in an underlying breach of contract action, Workforce initiated supplementary proceedings against Urban in an effort to discover assets that could be used to satisfy the judgment. Workforce also filed discovery citations against other entities that potentially held Urban's assets that could be applied toward the judgment, including TSG and USAF.

¶ 12 Workforce, Urban, and the third-party citation respondents engaged in extensive discovery over a two-year period. Workforce discovered that Urban, TSG, and USAF, among other entities, were owned or controlled by some combination of the same four individuals: Gordon McTavish, Steven Fenzl, Doug Ritter, and Ron Swane (the promoters).

¶ 13 The resulting matrix of entities and their ownership is complex. In the simplest terms, McTavish and Swane are the majority owners of Urban, vis-à-vis their operation of a wholly owned subsidiary of Drader, which is itself owned and controlled by McTavish and Swane. Fenzl and Ritter own the remainder of Urban. All four of the promoters are the sole members of the board of directors of Urban.

¶ 14 The promoters indirectly own 70% of USAF. Ritter and Fenzl own 35% of USAF vis-à-vis their sole ownership of a holding company. McTavish and Swane own another 35% of USAF in a similar arrangement.

¶ 15 The promoters also indirectly own 100% of TSG. Ritter and Fenzl's holding company owns half of TSG. McTavish and Swane own the other half as owners and controllers of another wholly owned subsidiary of Drader.

¶ 16 McTavish and Swane are also part owners of 703795 Alberta, Ltd. (Alberta). McTavish is president of Alberta and Swane is secretary-treasurer. Both men are also directors of the company.

¶ 17 According to Workforce, the discovery documents and depositions of McTavish and Swane revealed that Urban engaged in certain financial transactions with Drader, TSG, USAF, and Alberta in an effort to avoid paying its judgment. Workforce then filed a motion for turnover of assets. It asserted two claims under the Act, one challenging a May 2008 transaction between Urban and TSG, and one challenging a May 2005 transaction between Urban and USAF.

¶ 18 a. Count I: The Urban-TSG Transaction

¶ 19 First, Workforce challenged a May 2008 transaction in which Urban transferred all of its assets to TSG. Workforce alleged that Urban owed Drader $787,000 after Drader refinanced a high-interest line of credit Urban took out (Urban loan). To finance this transaction, Drader borrowed $1 million from HSBC Bank (Drader loan). In return, Urban entered into security agreements with Drader and HSBC. In essence, they obtained blanket liens over all of

Urban's assets. Urban asserted that Drader and HSBC filed financing statements pursuant to the provisions of the Uniform Commercial Code (UCC) (810 ILCS 5/1-101 *et seq.* (West 2008)) evidencing that they were secured creditors. HSBC subsequently transferred its security interest to Drader.

¶ 20    Alberta then purchased the Urban loan debt from Drader for about $187,000. Although Drader "wrote off" the remaining $600,000 for beneficial tax purposes, indicating that the Urban debt was uncollectable, Urban still remained obligated to repay the full amount of the debt to Alberta. The written agreement between Alberta and Drader with respect to this transaction was signed by McTavish on behalf of both parties.

¶ 21    Urban and TSG then entered into an asset purchase sale. TSG purchased all of Urban's assets but assumed none of its liabilities (specifically, Workforce's judgment), other than the $787,000 debt to Alberta and a $125,000 debt owed to Fenzl. As the purchase was structured, TSG borrowed $935,000 from Alberta to finance the purchase. According to Workforce, the promoters

"took all of Urban's assets and placed them into another entity they all directly or indirectly controlled, and obligated this new entity to make payments only to themselves individually or to other entities that they directly or indirectly controlled."

Furthermore, Workforce alleged:

"There was no consideration for the purchase of [Urban's] assets other than a shuffling of debts among Urban insiders[, i.e., the promoters] designed only to benefit said insiders and leave Urban's legitimate creditors, [Workforce] chief amongst them, out in the cold."

¶ 22    Additionally, Workforce asserted that the timing of this transaction was suspect. It alleged that "[t]he transfer of all of Urban's assets to TSG closed on May 2, 2008. Once done, Urban withdrew its defense of the case brought by [Workforce] on May 12, 2008 which ultimately resulted in the [default] judgment."

¶ 23    Workforce alleged that this transaction met the standards for actual fraud under section 5(a)(1) of the Act and constructive fraud under sections 5(a)(2) and 6 of the Act. 740 ILCS 160/5(a)(2), 6 (West 2008).

¶ 24                    b. Count II: The Urban-USAF Transaction

¶ 25    Workforce also challenged an August 2005 transaction in which Urban loaned USAF $400,000. The loan agreement was signed by Ritter on behalf of USAF and by Fenzl on behalf of Urban. The loan agreement also indicated that Urban loaned Ritter $150,000. However, despite Workforce's motion to compel, the entities have not produced a promissory note evidencing the Ritter loan.

¶ 26    Workforce challenged the USAF loan as being actually and constructively fraudulent under sections 5(a)(1) and (a)(2) and 6 of the Act. 740 ILCS 160/5(a), 6 (West 2008). It claimed that the USAF loan occurred months after Workforce began demanding payment from Urban on the services contract.

¶ 27    In response to both counts, TSG and USAF argued that the challenged transactions were not "transfers" of "assets" as defined by the Act. They maintained that the property that was

conveyed was subject to existing secured liens that originated with the Urban and Drader loans. Such encumbered property is specifically excluded from the definition of "assets" contained in the Act. See 740 ILCS 160/2(b) (West 2008).

¶ 28                    c. The Court's Ruling on the Turnover Motion

¶ 29    The court heard oral argument on Workforce's turnover motion. However, despite Workforce's request, the court did not conduct an evidentiary hearing. The circuit court denied both of Workforce's claims and refused to order the turnover of any assets.

¶ 30    On count I, the court held that Workforce failed to prove that TSG held or controlled any of Urban's assets that could be applied to satisfy the judgment. It acknowledged TSG's argument and stated that to determine whether the property conveyed was an "asset" subject to "transfer" under the terms of the Act, it had to first determine whether the initial Urban and Drader loans were valid. It noted that Workforce had the burden of proving by clear and convincing evidence that the blanket liens obtained by Drader and HSBC were made with actual intent to hinder and delay Workforce's efforts to collect on the judgment.

¶ 31    Relying on a series of federal cases that it collectively referred to as the *Wachovia* cases,[1] the circuit court concluded that Workforce failed to present sufficient evidence to find Drader's claimed secured liens invalid, as was done in *Wachovia*. See *Wachovia Securities, LLC v. Jahelka*, 586 F. Supp. 2d 972, 1016 (N.D. Ill. 2008). In distinguishing this case from the *Wachovia* cases, the circuit court specifically noted that the procedural postures of the cases were different. Specifically, the proceedings in Wachovia included more extensive inquiries than those involved in a limited supplementary proceeding such as this one. See *Loop Corp.*, 2010 U.S. Dist. LEXIS 141896, *7-8.

¶ 32    Additionally, it noted that in Wachovia, the district court conducted a bench trial with testimony and evidence provided by the affected parties. *Jahelka*, 586 F. Supp. 2d at 978. Here, by contrast, it noted that "Workforce obtained a default judgment against Urban and [did] not present a fully developed record." Moreover, the court concluded, the evidence Workforce did present was rebutted by documentary evidence offered by TSG. Consequently, the circuit court concluded that Workforce "failed to prove by clear and convincing evidence that Drader and HSBC's blanket liens were made with actual intent to hinder and delay Workforce's efforts to collect its judgment."

¶ 33    The court held that Workforce also failed to prove constructive fraud. Again the court

[1]See *Wachovia Securities, LLC v. Jahelka*, 586 F. Supp. 2d 972 (N.D. Ill. 2008), *vacated in part on other grounds*, *Wachovia Securities, LLC v. Banco Panamericano, Inc.*, 674 F.3d 743 (7th Cir. 2012); *Wachovia Securities, LLC v. Neuhauser*, 528 F. Supp. 2d 834 (N.D. Ill. 2007); *Wachovia Securities, LLC v. Loop Corp.*, No. 05 C 3788, 2011 U.S. Dist. LEXIS 17150 (N.D. Ill. Feb. 18, 2011); *Wachovia Securities, LLC v. Loop Corp.*, No. 05 C 3788, 2010 U.S. Dist. LEXIS 141896 (N.D. Ill. June 18, 2010); *Wachovia Securities, LLC v. Loop Corp.*, No. 05 C 3788, 2010 U.S. Dist. LEXIS 141895 (N.D. Ill. May 5, 2010); *Wachovia Securities, LLC v. Loop Corp.*, No. 05 C 3788, 2008 U.S. Dist. LEXIS 49251 (N.D. Ill. June 27, 2008); *Wachovia Securities, LLC v. Neuhauser*, No. 04 C 3082, 2004 U.S. Dist. LEXIS 22564 (N.D. Ill. Nov. 4, 2004).

concluded that Workforce failed to present sufficient evidence that the Urban loan was made in bad faith or that it was made for less than reasonably equivalent value as required by the Act. See 740 ILCS 160/5(a)(2), 6 (West 2008).

¶ 34 On count II, the court held that the claim against the USAF loan was extinguished because it was not brought within the time frame prescribed by the Act. 740 ILCS 160/10 (West 2008). The court stated that the Urban loan to USAF was made on August 19, 2005, but the motion for turnover of assets was made on January 12, 2010. Therefore, it determined that the claim had not been brought within four years after the loan from Urban to USAF was made.

¶ 35 It also concluded that the claim was not made "within one year after the USAF loan could reasonably have been discovered." The court specifically discussed documents that Workforce received from USAF on December 10, 2008, including a copy of an August 19, 2005, promissory note "evidencing the loan from Urban to USAF." USAF also produced e-mail correspondence between Drader's counsel and Workforce's counsel. In it, Workforce requested that Drader " 'identify, with specificity, those few documents that you believe are dispositive of the [issue that Urban's assets were subject to a prior perfected security interest].' " Workforce also stated that it would be " 'examining [its] options with respect to fraudulent conveyance theories.' " Drader produced the documents and responded that it believed that "fraudulent conveyance theories were beyond the scope of the citation to discover assets." The court concluded that the motion for turnover

> "was filed more than a year after the e-mail correspondence between Drader's counsel and Workforce's counsel. Thus, Workforce's cause of action with respect to Urban's loan to USAF is extinguished because it was brought more than a year after it could reasonably have been discovered by Workforce."

The court also denied Workforce's request regarding the production of documents related to Urban's loan to Ritter.

¶ 36                                                2. Analysis
¶ 37                               a. Count I: The Urban-TSG Transaction
¶ 38 On appeal, Workforce challenges the circuit court's denial of its motion for turnover. First, Workforce contends that the court erred in denying count I of its motion without conducting an evidentiary hearing. We agree.

¶ 39 Section 2-1402 of the Code permits a judgment creditor to initiate supplementary proceedings against a judgment debtor to discover assets of the debtor and to apply those assets to satisfy an unpaid judgment. 735 ILCS 5/2-1402(a) (West 2008); *Stonecrafters, Inc. v. Wholesale Life Insurance Brokerage, Inc.*, 393 Ill. App. 3d 951, 958 (2009). Section 2-1402 endows the court with broad powers to compel the application of discovered assets to satisfy a judgment. *Stonecrafters*, 393 Ill. App. 3d at 958. In fact, the court may compel a named third party, referred to as a third-party citation respondent, to turn over assets belonging to the judgment debtor. *Stonecrafters*, 393 Ill. App. 3d at 958. However, in order to compel a third-party citation respondent to turn over such assets, there must be some evidence in the record that it is holding assets of the judgment debtor and that the judgment

-7-

debtor would have the right to recover those assets from the third party. *Schak v. Blom*, 334 Ill. App. 3d 129, 133 (2002).

¶ 40    Thus, the only relevant inquiries in a supplementary proceeding are (1) whether the judgment debtor is holding assets that should be applied to the judgment; and (2) whether a third-party citation respondent is holding assets of the judgment debtor that should be applied to the judgment. *Schak*, 334 Ill. App. 3d at 133. However, when applicable, a claim made under the Act may also be brought in a supplementary proceeding. *Kennedy v. Four Boys Labor Service, Inc.*, 279 Ill. App. 3d 361, 368-69 (1996).

¶ 41    The procedure for conducting supplementary proceedings is prescribed by Illinois Supreme Court Rule 277 (eff. July 1, 1982). 735 ILCS 5/2-1402(a) (West 2008). Rule 277(e) states that "[t]he examination of the judgment debtor, third party, or other witnesses shall be before the court" and that "interested part[ies] may subpoena witnesses and adduce evidence as upon the trial of any civil action." Ill. S. Ct. R. 277(e) (eff. July 1, 1982). We have previously interpreted this language as imposing a requirement on the court to conduct a trial or evidentiary hearing to determine ownership of a third party's assets where both the judgment creditor and the third-party citation respondent claim entitlement to those assets. See, *e.g.*, *Harmon v. Ladar Corp.*, 200 Ill. App. 3d 79, 83 (1990); *Meggison v. Stevens*, 21 Ill. App. 3d 505, 509 (1974); *Roy Strom Excavating & Grading Co. v. National Bank of Albany Park*, 4 Ill. App. 3d 561, 566-67 (1972). Failure to do so is reversible error. *Harmon*, 200 Ill. App. 3d at 83 (citing *Roy Strom Excavating*, 4 Ill. App. 3d at 565-66). We specifically held that it is insufficient for the court to decide the matter based solely on the arguments of counsel without hearing evidence on a fraudulent conveyance allegation. *Harmon*, 200 Ill. App. 3d at 83 (citing *Roy Strom Excavating*, 4 Ill. App. 3d at 565-66).

¶ 42    In each of the above-cited cases, the circumstances were such that the third-party citation respondent made the demand for an evidentiary hearing. However, the principle is no less applicable here where the judgment creditor is the party demanding the hearing. Indeed, neither the statute nor the rule limits a hearing under Rule 277(e) to a demand made by a third-party citation respondent. See 735 ILCS 5/2-1402 (West 2008); Ill. S. Ct. R. 277(e) (eff. July 1, 1982). In order for a dispute to arise, the third-party citation respondent also must have made a claim on the asset at some point in the proceedings. Resolving that dispute raises a question of fact requiring an evidentiary hearing regardless of which party raises it. *Cf. Harmon*, 200 Ill. App. 3d at 83 ("if the judgment creditor claims entitlement to the assets of a third party *** and the third party contests the claim, a trial must be held").

¶ 43    With that said, there is no rule prohibiting the parties from waiving their right to an evidentiary hearing, as in any other civil action. See Ill. S. Ct. R. 277(e) (eff. July 1, 1982). The parties may stipulate to entry of judgment based on the pleadings, citation examinations, and other stipulated evidence. *Harmon*, 200 Ill. App. 3d at 83; Ill. S. Ct. R. 277(e) (a judgment creditor may "elect[ ] by so indicating in the citation or subpoena served or by requesting the court to so order, to conduct all or a part of the hearing by deposition"). They may also seek to dispose of claims by filing motions for summary judgment. *Harmon*, 200 Ill. App. 3d at 83. However, in contested matters, a trial is required. *Harmon*, 200 Ill. App. 3d at 83.

¶ 44    Here, Workforce and TSG each claimed ownership of funds TSG received from Urban and vigorously contested the other's claim. Specifically, TSG argued that it took the Urban funds subject to prior perfected secured liens and, therefore, the funds were exempt from turnover. Workforce argued, among other things, that the security interest was abandoned when Drader "released or transferred" its interest to Alberta and Alberta failed to record the lien. During oral argument on the turnover motion, Workforce requested that the court conduct an evidentiary hearing to resolve the simultaneous claims to the Urban funds. Although the court acknowledged Workforce's request at oral argument, it nevertheless issued its order based solely on the arguments of counsel, without addressing Workforce's hearing request. In essence, the court ruled that there was no evidence showing that TSG possessed assets of the judgment debtor, but prevented Workforce from obtaining such evidence. See *Schak*, 334 Ill. App. 3d at 133. As such, the court committed reversible error. *Harmon*, 200 Ill. App. 3d at 83.

¶ 45    TSG argues that under *Dowling v. Chicago Options Associates, Inc.*, 226 Ill. 2d 277 (2007), the circuit court has the authority to rule as a matter of law in supplementary proceedings. We have no quarrel with that proposition of law; however, it is of no assistance to TSG here. As stated above, parties are free to proceed by way of summary judgment motion or otherwise stipulate to the facts to allow the court to decide questions as a matter of law. *Harmon*, 200 Ill. App. 3d at 83. In *Dowling*, the supreme court held that in such cases where the court does not conduct an evidentiary hearing, a reviewing court applies a *de novo* standard of review, overruling the appellate court's application of the abuse of discretion standard of review. Compare *Dowling*, 226 Ill. 2d at 285 (where the circuit court did not conduct an evidentiary hearing or make any findings of fact on a motion for turnover, "we review the court's ruling *** *de novo*"), with *Dowling v. Chicago Options Associates, Inc.*, 365 Ill. App. 3d 89, 94-95 (2006) (even where no evidentiary hearing was held, "the standard of review of a turnover order under section 2-1402 is *** abuse of discretion"). Nevertheless, neither the supreme court nor the appellate court opinion in *Dowling* addressed the propriety of conducting an evidentiary hearing, which is the issue in this case. Neither Workforce nor TSG proceeded by way of summary judgment here, and there is no other indication in the record that they stipulated to the facts or waived their rights to an evidentiary hearing. Quite the contrary. Therefore, the court was not permitted to decide the issue on the moving papers.

¶ 46    Accordingly, the court erred in denying Workforce's motion for turnover of assets held by TSG without first conducting an evidentiary hearing. Because the matter will be remanded for an evidentiary hearing, we need not address Workforce's arguments on the merits.

¶ 47                              b. Count II: The Urban-USAF Transaction

¶ 48    Workforce also appeals from the court's ruling that count II of its motion was untimely under section 10 of the Act. In count II, Workforce challenged a loan Urban made to USAF on August 19, 2005, as a fraudulent transaction. Although Workforce asserted that the USAF loan constituted actual fraud under section 5(a)(1) of the Act and constructive fraud under sections 5(a)(2) and 6, the court's order only analyzed the timeliness of the claim for actual fraud and did not address either of the constructive fraud claims.

¶ 49 Section 10 of the Act governs limitations periods. It states:

"A cause of action with respect to a fraudulent transfer or obligation under this Act is extinguished unless action is brought:

(a) Under paragraph (1) of subsection (a) of Section 5, within 4 years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant[.]" 740 ILCS 160/10 (West 2008).

¶ 50 Paragraph (a) contains two clauses under which to proceed. The first clause bars a cause of action with respect to a fraudulent transfer brought more than four years after the challenged transfer was made. 740 ILCS 160/10 (West 2008); *Salisbury v. Majesky*, 352 Ill. App. 3d 1188, 1190-91 (2004) (citing *Levy v. Markal Sales Corp.*, 311 Ill. App. 3d 552, 556 (2000)). The second clause bars claims that were filed more than one year after "the transfer or obligation was or could reasonably have been discovered by the claimant." 740 ILCS 160/10(a) (West 2008); *Gilbert Brothers, Inc. v. Gilbert*, 258 Ill. App. 3d 395, 399 (1994).

¶ 51 In *Gilbert Brothers*, we recognized that the second clause of section 10(a) is a "reiteration of the discovery rule," which the supreme court described at length in *Knox College v. Celotex Corp.*, 88 Ill. 2d 407 (1981). *Gilbert Brothers*, 258 Ill. App. 3d at 399. The discovery rule " 'postpone[s] the commencement of the relevant statute of limitations until the injured plaintiff knows or reasonably should have known that he has been injured and that his injury was wrongfully caused.' " *Mitsias v. I-Flow Corp.*, 2011 IL App (1st) 101126, ¶ 21 (quoting *Golla v. General Motors Corp.*, 167 Ill. 2d 353, 361 (1995)); see also *Knox College*, 88 Ill. 2d at 414-15. It is at that point that the injured person assumes the burden of " 'inquir[ing] further as to the existence of a cause of action' " and to bring any such actions within the limitations period. (Emphasis omitted.) *Knox College*, 88 Ill. 2d at 416 (quoting *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981)). The purpose of the discovery rule is to alleviate the "harsh results resulting from the literal application of the [limitations] statute." *Knox College*, 88 Ill. 2d at 414.

¶ 52 Discovering whether an injury was "wrongfully caused" means the injured party must have (1) sufficient information that its injury was caused by the actions of another and (2) sufficient information "to spark inquiry in a reasonable person as to whether the conduct of the party who caused [the] injury might be legally actionable." *Mitsias*, 2011 IL App (1st) 101126, ¶ 22. As to the second element, the injured party must have more than a mere suspicion that wrongdoing might have occurred in order to trigger the limitations period. *Mitsias*, 2011 IL App (1st) 101126, ¶ 24. A suspicion of wrongful conduct, " 'without examining the reasons underlying those suspicions, is not enough to constitute constructive knowledge that an injury was wrongfully caused.' " *Mitsias*, 2011 IL App (1st) 101126, ¶ 24 (quoting *Young v. McKiegue*, 303 Ill. App. 3d 380, 390 (1999)). Thus, the limitations period "is not triggered during that period in which the party is attempting to discover whether her injury is wrongfully caused." *Young*, 303 Ill. App. 3d at 389-90.

¶ 53 On the other hand, the injured party need not have actual knowledge of negligent conduct or know that an actionable wrong was committed before the limitations period begins to run. *Knox College*, 88 Ill. 2d at 415. Among other things, that " 'assumes a conclusion which

must properly await legal determination.' " *Knox College*, 88 Ill. 2d at 415 (quoting *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 170-71 (1981)). Rather,

> "[a]t some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. At that point, under the discovery rule, the running of the limitations period commences." *Knox College*, 88 Ill. 2d at 416-17.

Determining when the limitations period begins is a question of fact, to which we apply a manifest weight of the evidence standard of review. *Knox College*, 88 Ill. 2d at 416-17; *Eychaner v. Gross*, 202 Ill. 2d 228, 251 (2002) (we defer to the findings of a trial court unless they are against the manifest weight of the evidence).

¶ 54    In this case, the court did not hear any evidence on the timeliness of the claim against the 2005 loan to USAF or make any findings in that regard. In fact, the issue was never briefed by the parties in the filings regarding the turnover motion. The only matter raised relative to a limitations period was in a filing entitled "Reply in Support of [a] 735 ILCS 5/2-1402(e) Motion to Enforce *** Secured Interests Over Assets of the Judgment Debtor and to Deny Plaintiff's Turnover Motion." That reply brief was filed by Drader, which was a nonparty adverse claimant. Nevertheless, in that filing, Drader argued that Workforce was barred from challenging the *2003 loan from Drader and HSBC to Urban* as fraudulent under the Act because it was beyond the limitations period. However, the court's order concluded that the claim challenging the *2005 Urban-USAF loan* was barred by the limitations period. Thus, to the extent that the limitations period was addressed at all by the litigants in the case below, it was in the context of a different transaction. In any event, the court did not conduct the proper factual inquiry into the timeliness of the claims and its judgment must be reversed.

¶ 55    The court also erred as a matter of law because it applied the wrong legal standard in evaluating the timeliness of Workforce's claim against the Urban-USAF loan. As discussed above, the second clause of section 10 operates as the discovery rule does, postponing the start of the limitations period until the injured party knows or should know it has been injured and knows or should know that the injury was wrongly caused, and granting the injured party one year from that time to file its claim. *Knox College*, 88 Ill. 2d at 416; 740 ILCS 160/10 (West 2008).

¶ 56    Here, by contrast, the circuit court ruled that Workforce brought its claim more than one year after discovering the *mere fact* that the Urban-USAF loan occurred. In support, the court noted that in December of 2008, Workforce received a copy of the purported unsecured promissory note "evidencing the loan from Urban to USAF" and mentioned that USAF produced other unspecified documents responsive to the citation to discover assets. The court failed to conduct any analysis to determine when Workforce became aware of its *injury* and whether that injury was wrongfully caused. The standard applied by the court defeats the purpose of the discovery rule as it appears in the second clause of the statute, which is to "alleviate what has been viewed as harsh results resulting from the literal application of the [limitations] statute." *Knox College*, 88 Ill. 2d at 414.

¶ 57    The court also concluded that Workforce's claim regarding the Urban-USAF loan was time-barred because it was filed more than one year after Drader's counsel and Workforce's

counsel engaged in correspondence regarding Drader's security interest in Urban's assets. The court cited to e-mail correspondence from December of 2008 in which Drader and USAF "stated that Urban's assets were subject to a prior perfected security interest" in Urban's assets dating back to 2003. Workforce then requested discovery relating to that security interest and also "stated that it would be 'examining [its] options with respect to fraudulent conveyance theories.' " The court then noted that "Drader's counsel attached copies of the referenced filings and explained that it believed that Workforce's fraudulent conveyance theories were beyond the scope of the citation to discover assets."

¶ 58        Based on the court's order, we fail to see any connection between Workforce's awareness of Drader's security interest in Urban's assets and Workforce's awareness of an injury caused by an allegedly fraudulent transfer from Urban to USAF. Although Workforce stated that it was "examining its options with respect to fraudulent conveyance theories," given the context of that statement, Workforce was referring to fraud relative to Drader's security interest in Urban's assets. That is not the transaction that Workforce challenged in count II of its motion. Without more, this correspondence does not suggest that Workforce had knowledge of an injury based on the Urban-USAF loan or that any such injury was wrongfully caused.

¶ 59        Accordingly, the court erred in finding count II extinguished as to the Urban-USAF loan. It failed to properly analyze the claim under the second clause of section 10(a) of the Act by applying the discovery rule. Therefore, we remand the matter to the court to address the extinguishment issue under the applicable standard outlined above and make a determination based on evidence presented by the parties. Furthermore, should the claim survive, the court is required to hold an evidentiary hearing on Workforce's challenge to the Urban-USAF loan for the same reasons set forth in our analysis of count I.

¶ 60                                B. Appeal No. 1-11-3046 (Direct Action)

¶ 61                                              1. Facts

¶ 62        Workforce filed a separate cause of action against TSG, USAF, Drader, the promoters, and other entities owned directly or indirectly by some combination of them. It asserted seven counts. TSG and three of its wholly owned subsidiaries (the TSG companies), along with McTavish (collectively, the movants), filed a motion to dismiss the entire complaint.

¶ 63        Count I was a claim under the Act alleging that the Urban-TSG transaction, the Urban-USAF loan, and the alleged loan to Ritter were all actually and constructively fraudulent for reasons similar to those alleged in the supplementary proceeding. The movants sought dismissal under section 2-619(a)(3) of the Code, asserting that "Workforce has already brought and lost another action (i) between the same parties and (ii) for the same cause." They asserted that the court's rulings on the turnover motion in the supplementary proceeding barred Workforce from filing the same claims here. The movants also asserted that the claims were time barred based on the court's ruling in the supplementary proceeding. Additionally, the movants challenged count I under section 2-615 of the Code. They asserted that all of Urban's assets were covered by valid security interests; therefore, there was no "transfer" of "assets" as defined in the Act.

-12-

¶ 64    Count II alleged that each of the promoters breached a fiduciary duty to Workforce as Urban's creditor. The movants also sought dismissal of count II under section 2-619(a)(3) because it relied on rulings made in the supplementary proceeding. Furthermore, they challenged count II under section 2-615 because (a) Workforce lacked standing to sue for breach of fiduciary duty, and (b) Workforce could not prove damages where all of Urban's assets were pledged to other secured creditors.

¶ 65    Count III was an alter ego claim filed against all of the defendants, alleging that the promoters commingled funds, failed to observe adequate corporate formalities, failed to adequately capitalize some or all of the companies, and failed to treat the various companies as separate entities. Count IV was a claim for piercing the corporate veil asserted against each of the promoters. It asserted that there was unity of interest among the companies such that they ceased to have an independent corporate existence. The movants sought to dismiss these counts under section 2-615 based on their insufficient and conclusory allegations.

¶ 66    Count V asserted a claim for successor liability. Workforce alleged that the TSG companies were mere continuations of Urban after the Urban-TSG transaction; therefore, they were responsible for Urban's liabilities. The movants asserted that count V contained insufficient allegations and sought dismissal under section 2-615.

¶ 67    Count VI alleged a breach of the duty of disclosure and candor and count VII alleged fraudulent concealment against the promoters for withholding information during the underlying breach of contract lawsuit. Workforce alleged that these misrepresentations allowed the promoters to "buy time" while they dissipated Urban's assets before the judgment was entered. The movants challenged counts VI and VII under section 2-615, arguing that there are no recognized causes of action for a breach of the duty of disclosure and candor or fraudulent concealment.

¶ 68    The circuit court first dismissed counts I, VI, and VII with prejudice and deferred its ruling on the remaining counts. However, the record contains only a form order to that effect; no transcript of the hearing was included.

¶ 69    The court later issued a written decision dismissing the remaining counts. It dismissed count II with prejudice under section 2-615. It concluded that Workforce adequately alleged damages in its breach of fiduciary duty claim, but could not prove proximate cause because, based on the ruling in the supplementary proceeding, Workforce never proved that Drader's secured lien was invalid. Because Drader held a valid lien superior to that of Workforce, Workforce could never have collected the unpaid debt. Therefore, it could never prove that its injury was caused by the promoters' breach. The court declined to address whether Workforce had standing to bring the claim.

¶ 70    The court also dismissed count V with prejudice. It concluded that Workforce failed to adequately plead facts to establish a "complete identity" between Urban and the TSG companies. Counts III and IV were dismissed without prejudice and are not before us on appeal.

¶ 71                             2. Analysis

¶ 72                      a. Section 2-619 Dismissals

¶ 73    The movants challenged counts I and II of Workforce's complaint under section 2-619(a)(3) of the Code. A motion to dismiss under section 2-619 admits the legal sufficiency of the complaint, but asserts that some affirmative matter outside the complaint defeats the cause of action. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009). We generally review dismissals under section 2-619 *de novo*, meaning that "we perform the same analysis that a trial judge would perform." *Performance Network Solutions, Inc. v. Cyberklix US, Inc.*, 2012 IL App (1st) 110137, ¶ 26; *Kean*, 235 Ill. 2d at 361.

¶ 74    However, when a motion is brought under section 2-619(a)(3) of the Code, as in this case, the circuit court has discretion to decide whether dismissal is warranted. 735 ILCS 5/2-619(a)(3) (West 2008); *Performance Network Solutions*, 2012 IL App (1st) 110137, ¶ 27. Section 2-619(a)(3) allows dismissal of a claim if there is "another action pending between the same parties for the same cause." 735 ILCS 5/2-619(a)(3) (West 2008). The court then must evaluate four factors to determine whether the action does in fact involve the same parties and the same claims involved in a pending case and whether the nonmoving party would be prejudiced by dismissal. *Kapoor v. Fujisawa Pharmaceutical Co.*, 298 Ill. App. 3d 780, 785-86 (1998) (reciting the four-factor test and the necessity of considering prejudice). Therefore, we review dismissals under section 2-619(a)(3) for an abuse of discretion. *Performance Network Solutions*, 2012 IL App (1st) 110137, ¶ 27.

¶ 75    Although the movants nominally challenged counts I and II of Workforce's complaint under section 2-619(a)(3), the substance of their arguments asserted that the claims were barred by the doctrine of collateral estoppel. Collateral estoppel "prevents relitigation of issues of law or fact that have previously been litigated and decided in an action involving the same parties or their privies." *In re Huron Consulting Group, Inc.*, 2012 IL App (1st) 103519, ¶ 22.

¶ 76    Here, the movants did not present arguments analyzed under the legal framework described above for a section 2-619(a)(3) claim. Rather, they argued that the issues underlying the claims made by Workforce in this case were already decided by the court's rulings in the supplementary proceeding. Specifically, they recounted that in the supplementary proceeding, the court held: (a) that Workforce did not prove actual or constructive fraud with respect to the Urban-USAF loan or the Urban-TSG transaction; (b) that Urban's assets were secured by liens making them exempt from transfer under the Act; and (c) that the claims challenging the Urban-USAF loan and the validity of Drader's liens were time barred. Therefore, they argue, requiring them to defend against the claims made in this complaint "will require the [movants] to litigate the exact matter that has already been decided by [the court in the supplementary proceeding]." The court also did not analyze the movants' claims under the aforementioned legal framework for a section 2-619(a)(3) dismissal, but addressed the claims as presented in the motion. Thus, we will treat defendant's argument as if it had asserted the doctrine of collateral estoppel.

¶ 77    A defendant that seeks dismissal of a claim that is barred by collateral estoppel or *res judicata* proceeds under section 2-619(a)(4) of the Code. *Yorulmazoglu v. Lake Forest*

*Hospital*, 359 Ill. App. 3d 554, 558 (2005). In asserting collateral estoppel, the defendant must show: (1) that the issue previously adjudicated is identical to the one in the pending action; (2) that a final judgment on the merits exists in the prior case; and (3) that the prior action involved the same parties or their privies. *Yorulmazoglu*, 359 Ill. App. 3d at 558. The applicability of the doctrine is a question of law subject to *de novo* review. *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 158 (2010).

¶ 78    Here, the movants' argument fails on the second factor. As we discussed above in our analysis of the supplementary proceedings, the court improperly dismissed Workforce's claims because it failed to conduct the necessary evidentiary hearings and improperly determined that a claim was time barred. We reversed the very rulings on which the movants relied as the basis for their motion to dismiss counts I and II. Therefore, there is no final judgment on the merits that would preclude Workforce from bringing its claims here. *Cf. In re Chilean D.*, 304 Ill. App. 3d 580, 585 (1999) (where complaint was voluntarily dismissed, there was no final judgment on the merits, defeating collateral estoppel claim). Accordingly, we reverse the circuit court's dismissal of counts I and II under section 2-619(a)(4) of the Code.

¶ 79                    b. Section 2-615 Dismissals

¶ 80    The movants also challenged Workforce's complaint under section 2-615. A motion to dismiss under section 2-615 of the Code tests the legal sufficiency of the complaint. *Kean*, 235 Ill. 2d at 361. When reviewing a section 2-615 motion to dismiss, we accept as true all well-pleaded facts and reasonable inferences that may be drawn from them. *Tuite v. Corbitt*, 224 Ill. 2d 490, 510 (2006). We construe the allegations of the complaint in the light most favorable to the plaintiff to determine whether he sufficiently established a cause of action upon which relief may be granted. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 11-12 (2005). Put another way, we must determine whether there is any set of facts that can be proved that would allow the plaintiff to recover. *Tuite*, 224 Ill. 2d at 510; *Apollo Real Estate Investment Fund, IV, L.P. v. Gelber*, 403 Ill. App. 3d 179, 186 (2010).

¶ 81    The circuit court dismissed count II of the complaint, reasoning that Workforce could not establish a claim for breach of fiduciary duty against the promoters–Ritter, Fenzl, Swane, and McTavish–because it could not establish proximate cause. Specifically, it found that because Workforce failed to prove during the supplementary proceeding that Drader's lien on Urban's assets was invalid, Workforce could not establish that its injury was legally caused by the alleged breach. However, because we reversed that finding in the supplementary proceeding, it can no longer support the circuit court's reason for dismissal.

¶ 82    We conclude that Workforce stated a claim under the Act and dismissal was improper. To state a claim for breach of fiduciary duty, a plaintiff must allege that the defendant owes him a fiduciary duty; that the defendant breached that duty; and that he was injured as a proximate result of that breach. *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 747

(2009). The movants asserted that Workforce did not have "standing"[2] to assert this claim because Illinois does not recognize a fiduciary relationship among directors and officers and the corporation's creditors. The circuit court did not resolve the question of whether a duty existed, but suggested that our holding in *Prime Leasing, Inc. v. Kending*, 332 Ill. App. 3d 300 (2002) rejected the existence of such a duty. We disagree.

¶ 83    The movants are correct that generally, corporate officers only owe a fiduciary duty to the corporation and its shareholders. *Paul H. Schwendener, Inc. v. Jupiter Electric Co.*, 358 Ill. App. 3d 65, 75 (2005). However, under certain circumstances, an officer may owe a fiduciary duty to the corporation's creditors. *Paul H. Schwendener*, 358 Ill. App. 3d at 75. Specifically, once a corporation becomes insolvent, an officer's fiduciary duty extends to the creditors of the corporation because, from the moment insolvency arises, the corporation's assets are deemed to be held in trust for the benefit of its creditors. *Paul H. Schwendener*, 358 Ill. App. 3d at 75. To the extent that it is relevant, *Prime Leasing* does not hold to the contrary. In that case, we stated that "directors do not owe creditors duties beyond the relevant contractual terms," but acknowledged that a director's duty does extend to the corporation's creditors "in special circumstances, *e.g.*, fraud, *insolvency*, or a violation of a statute." (Emphasis added.) *Prime Leasing*, 332 Ill. App. 3d at 314. However, we were applying Delaware law in that case. *Prime Leasing*, 332 Ill. App. 3d at 314 n.1. Nevertheless, the legal principle is the same one we apply in Illinois, and Workforce adequately pled it here.

¶ 84    Workforce alleged that Urban was insolvent, which gave rise to a fiduciary duty running from the officers and directors of Urban to Workforce as one of its creditors. It specifically alleged that the promoters, as the officers and directors of Urban, were obligated to manage Urban's assets for the benefit of its creditors. It alleged that the promoters breached their duties by causing Urban to make fraudulent transfers to Ritter, USAF, and TSG for little or no consideration. Finally, Workforce alleged that it was injured by its inability to collect the debt owed to it by Urban because of the promoters' improper self-dealing. It therefore pled a claim for breach of fiduciary duty.

¶ 85    The movants next argued that count V for "successor liability" should be dismissed because Workforce failed to sufficiently allege that TSG was merely a continuation of Urban such that TSG should be liable for Urban's debts. The circuit court agreed, concluding that as alleged, "the overlapping interest between Urban & TSG is less than one-third[, which is] a far cry from the standard of " 'complete identity' " required by law. That is, Workforce did not allege facts "tying any corporate officers and directors of Urban to TSG."

¶ 86    The doctrine of successor corporate nonliability provides that when a corporation purchases the assets of another corporation, the purchaser is generally not liable for the debts or liabilities of the seller. *Pielet v. Pielet*, 407 Ill. App. 3d 474, 508 (2010) (quoting *Vernon v. Schuster*, 179 Ill. 2d 338, 344-45 (1997)). However, there are four exceptions to that

---

[2]We note that section 2-619(a)(2) is the appropriate procedural device for challenging standing claims. 735 ILCS 5/2-619(a)(2) (West 2008) (governing cases in which a "plaintiff does not have legal capacity to sue").

doctrine, which are intended to protect the rights of corporate creditors after dissolution: "(1) where there is an express or implied agreement of assumption [of liability]; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations." *Pielet*, 407 Ill. App. 3d at 508 (citing *Vernon*, 179 Ill. 2d at 345). Here, the third exception is at issue.

¶ 87    The mere continuation exception applies "when the purchasing corporation is merely a continuation or reincarnation of the selling corporation." (Internal quotation marks omitted.) *Pielet*, 407 Ill. App. 3d at 509. The purchasing corporation is the mere continuation of the selling corporation when "the purchasing corporation maintains the same or similar management and ownership but merely wears different clothes." (Internal quotation marks omitted.) *Pielet*, 407 Ill. App. 3d at 509. It is well settled that "identity of ownership" is a key element in establishing the mere continuation exception. *Vernon*, 179 Ill. 2d at 347 (citing *Nilsson v. Continental Machine Manufacturing Co.*, 251 Ill. App. 3d 415, 418 (1993)). Identity of ownership is based on the common identity of officers, directors, and stock between the selling and purchasing corporations. *Vernon*, 179 Ill. 2d at 346-47.

¶ 88    However, as we have recently reaffirmed, " 'the continuity of shareholders necessary to a finding of mere continuation does not require complete identity between the shareholders of the former and successor corporations.' " *Dearborn Maple Venture, LLC v. SCI Illinois Services, Inc.*, 2012 IL App (1st) 103513, ¶ 38 (quoting *Park v. Townson & Alexander, Inc.*, 287 Ill. App. 3d 772, 775 (1997)); *Pielet*, 407 Ill. App. 3d at 510. In fact, "[a] change of shareholders is consistent with mere continuation as long as the former owners retain a controlling interest in the successor entity." *Pielet*, 407 Ill. App. 3d at 510.

¶ 89    In count V, Workforce alleged that "the shareholders, officers and directors of Urban are the members and managers of TSG, and that [the TSG companies], as fully owned subsidiaries of TSG, are also controlled by the same individuals." As the circuit court also recounted, Workforce alleged that "TSG is a subsidiary of Uniqued (66.67%), which is wholly owned by Ritter and Fenzl, who collectively own 49% of Urban." The circuit court concluded that these allegations were insufficient to establish "complete unity" between the parties. However, as stated above, complete unity is not required to establish mere continuation. See *Dearborn Maple Venture*, 2012 IL App (1st) 103513, ¶ 38; *Pielet*, 407 Ill. App. 3d at 510. Thus, the circuit court erred by applying the wrong legal standard in evaluating Workforce's allegations. Accordingly, we remand the matter to the circuit court to conduct a proper analysis of the claim.

¶ 90    In count VI, Workforce alleged that the promoters breached a "duty of disclosure and candor" because they did not produce all documents in their possession in the underlying breach of contract action. Workforce alleged that such a duty is "imposed by Illinois' discovery rules," though it cited none specifically. It sought monetary damages as a remedy for the breach. On appeal and in the court below, Workforce argues that such a cause of action was recognized by our supreme court in *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273 (1982). We disagree.

¶ 91    In *Ostendorf*, the plaintiff filed a petition for relief from judgment four years after the

-17-

judgment was entered. *Ostendorf*, 89 Ill. 2d at 278. It sought to set aside the judgment after learning that the defendant intentionally withheld documents during discovery. *Ostendorf*, 89 Ill. 2d at 278. In that case, the court analyzed section 72 of the former Civil Practice Act, which is now section 2-1401 of the Code. See 735 ILCS 5/2-1401 (West 2008) (formerly Ill. Rev. Stat. 1979, ch. 110, ¶ 72). That section provided that any "petition must be filed not later than 2 years after the entry of the order or judgment. Time during which *** the ground for relief is fraudulently concealed shall be excluded in computing the period of 2 years." Ill. Rev. Stat. 1979, ch. 110, ¶ 72(3). The plaintiff's petition specifically alleged that the defendant's conduct was intentional and constituted "fraudulent concealment" under the statute sufficient to toll the time for filing the petition. *Ostendorf*, 89 Ill. 2d at 278. The court agreed, holding that "as a matter of law, failure to comply with the obligation of full and truthful disclosure imposed on litigants by our discovery rules constitutes fraudulent concealment for purposes of tolling a statute of limitations." *Ostendorf*, 89 Ill. 2d at 282.

¶ 92        Workforce points to this holding as support for its contention that the supreme court recognizes an independent cause of action–remedied by a monetary damages award–for violating a duty of disclosure and candor imposed by the discovery rules. However, the context of the court's holding is clear: it did no such thing. Rather, it construed the phrase "fraudulent concealment" as it was used in the statute to determine whether a petition was timely filed. *Ostendorf*, 89 Ill. 2d at 282. Thus, we reject Workforce's interpretation of *Ostendorf*. Additionally, we find no further support for an independent cause of action arising out of an alleged breach of a duty of disclosure and candor. In the one case we found that mentioned such a violation, it was brought under a section of the Uniform Partnership Act and the remedy imposed was one prescribed by that statute. See *Updike v. Wolf & Co.*, 175 Ill. App. 3d 408, 419 (1988). Thus, in essence, the claim asserted was a violation of a statute. Accordingly, count VI was properly dismissed.

¶ 93        Finally, in count VII, Workforce alleged a cause of action for "fraudulent concealment" based on the same failure to produce documents in the underlying lawsuit. Although this court recognizes a cause of action for fraud based on the concealment of a material fact, Workforce did not sufficiently allege such a cause of action here and the claim was properly dismissed.

¶ 94        Fraud may consist of "the intentional omission or concealment of a material fact under circumstances creating an opportunity and duty to speak." (Internal quotation marks omitted.) *Hassan v. Yusuf*, 408 Ill. App. 3d 327, 345 (2011). In order to maintain such a claim, a plaintiff must establish the existence of a "special or fiduciary relationship, which would raise a duty to speak." (Internal quotation marks omitted.) *Hassan*, 408 Ill. App. 3d at 345. Here, Workforce failed to allege that it had a fiduciary relationship with the promoters in this context. It did sufficiently allege the existence of a fiduciary relationship with the promoters in count II arising out of its status as a creditor of Urban. However, no such allegations were made in count VII relative to its position as a plaintiff and the promoters' positions as defendants. Thus, the claim was properly dismissed.

¶ 95                                    CONCLUSION

¶ 96       For the foregoing reasons, we reverse the circuit court's order in the supplementary proceedings in appeal number 1-11-1410 and remand the matter for an evidentiary hearing. We also reverse the circuit court's dismissal of counts I, II, and V of the complaint in appeal number 1-11-3046. We affirm dismissal of counts VI and VII in that case.

¶ 97       No. 1-11-1410, Reversed and remanded.

¶ 98       No. 1-11-3046, Affirmed in part and reversed in part; cause remanded.